**Nos. 23-1996 & 23-2019**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

KAREN ALBRIGHT, et al.

*Plaintiffs-Appellees*

SHANNON CROSS, et. al.

*Objectors-Appellants*

---v.---

ASCENSION MICHIGAN, et al.

*Defendants-Appellees*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN, No. 1-22:cv-00638-JMB-SJB
The Honorable Jane M. Beckering, Judge Presiding

_____

**BRIEF OF PLAINTIFFS- APPELLEES
KAREN ALBRIGHT, ET AL.**

_____

NOAH S. HURWITZ
HURWITZ LAW PLLC
340 BEAKES ST. STE. 125
ANN ARBOR, MI 48104
(844) 487-9484
*COUNSEL FOR PLAINTIFFS-APPELLEES*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, Plaintiffs-Appellees Karen Albright, et al. make the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? **<u>NO</u>**

     If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

2.     Is there a publicly owned corporation, not a party to the appeal, that has a final interest in the outcome? **<u>NO</u>**

     If the answer is YES, list the identity of such corporation and the nature of the financial interest.

*/s/ Noah S. Hurwitz*                    February 28, 2024

Noah S. Hurwitz                            Date

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT AGAINST ORAL ARGUMENT ..................................... vi

STATEMENT OF JURISDICTION ...................................................... vii

STATEMENT OF ISSUES PRESENT FOR REVIEW ................................. viii

STATEMENT OF THE CASE AND PROCEDURAL POSTURE ..................... 1

SUMMARY OF THE ARGUMENT ........................................................ 9

STANDARD OF REVIEW ..................................................................... 10

ARGUMENT ........................................................................................ 11

I.     THE CLASS WARRANTED FINAL CERTIFICATION ............ 11

II.    THE DISTRICT COURT PROPERLY REVIEWED THE PROPOSED NATIONWIDE SETTLEMENT. ............................... 14

    A.    The Rule 23(e)(2) Factors Weighed in Favor of Approval. . 16

        1.    Class Counsel Adequately Represented the Class and the Agreement Provides Adequate Relief ................... 16

        2.    The Agreement was Contentiously Negotiated at Arms-Length. ................................................................. 20

        3.    The Agreement Treats Class Members Equally Relative to Each Other ................................................... 22

    B.    The Sixth Circuit Factors Weigh in Favor of Approval ...... 22

        1.    There was no Fraud or Collusion Between Counsel. 22

        2.    Litigation Through Trial Would Be Onerous ............. 24

        3.    The Parties Engaged in Some Discovery .................... 25

        4.    Plaintiffs-Appellees Would Be Prejudiced By No Settlement. ..................................................................... 26

        5.    Class Counsel and Representatives Support Settlement. ..................................................................... 28

        6.    Absent Class Members Support the Agreement. ....... 29

        7.    The Agreement Aligns with Public Interest .............. 30

III.   THE *HALCZENKO* CASE WAS NOT THE "FIRST FILED." ...31

IV.   THE COURT'S TEMPORARY INJUNCTION WAS PROPER
...................................................................................................32

V.   AMENDED COMPLAINTS FOR SETTLEMENT PURPOSES
ARE COMMON PRACTICE. ..........................................................35

VI.   PUTATIVE CLASS MEMBERS WERE FREE TO OPT OUT OF
THE AGREEMENT AND PURSUE CLAIMS OF THEIR OWN
...................................................................................................36

VII.   THE ATTORNEYS' FEES ARE REASONABLE. ........................37

    A.   The Proposed Attorney's Fees and Costs are Reasonable. .38

    B.   The Proposed Attorney's Fees and Costs Compare
    Favorably with Other Matters in the Sixth Circuit.............44

CONCLUSION............................................................................................47

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................................39

*Brown v. MGM Grand Casino*, No. 22-12978, 2023 WL 5489023 (E.D. Mich. Aug. 24, 2023) ..............................................................................................................20

*County Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477 (6th Cir. 2002) .............34

*Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013) ...............................................10

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) ..............................30

*Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) .........................................................19

*Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614 (E.D. Mich. 2020) ................................................................................................................................13

*Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir.1992) .......................22

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ........................15

*Hainey v. Parrot*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................46

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11-14275, 2013 WL 692856 (E.D. Mich. Feb 26, 2013) ....................................................................................14

*Hebrew v. Texas Dep't of Crim. Just.*, No. 22-20517, 2023 WL 5989580 (5th Cir. Sept. 15, 2023) .....................................................................................................20

*Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020) .......................10

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .... 30, 35, 40

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................................................................30

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089 (W.D. Tenn. Aug 2, 2016) ...................................................... 24, 28

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) .....................................................................................................23

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................24

*In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*, 722 F.3d 838 (6th Cir. 2013) .......................................................................................................10

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524 (6th Cir. 2014) .......32

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................................. passim

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) .....................................35

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) ...............22

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .... 40, 41, 43, 44

*Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530 (E.D. Mich. 2023) ............12

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ..................10

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).......................40

*Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993)...................39

*Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642 (6th Cir. 2009) ....................11

*Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ....................................................................................................................23

*Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ...............................................................................................13

*Sturgill v. Am. Red Cross*, No. 2:22-CV-11837, 2023 WL 8701293 (E.D. Mich. Dec. 15, 2023)..............................................................................................20

*Swigert v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................................................................46

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010) ..............................................................................................................................24

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)....................................17

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)......................................... 15, 29

**Rules**

Fed R. Civ. P. 23(e)(1)(A) .........................................................................................3

Fed R. Civ. P. 23(e)(1)(B) .........................................................................................3

Fed. R. Civ. P. 23(e) .................................................................................................4

Fed. R. Civ. P. 23(e)(2)..............................................................................................5

Fed. R. Civ. P. 23(h)................................................................................................29

## <u>STATEMENT AGAINST ORAL ARGUMENT</u>

Pursuant to Federal Rules of Appellate Procedure 34(a)(1) and Sixth Circuit Rules 28(b)(1) and 34(a), Plaintiffs-Appellees do not believe oral argument is necessary.

## **STATEMENT OF JURISDICTION**

Plaintiffs-Appellees agree that the United States District Court for the Western District of Michigan had subject matter jurisdiction over this matter as a civil action arising under the laws of the United States pursuant to 42 U.S.C. § 2000e and 28 U.S.C. § 1331.   Plaintiffs-Appellees also agree that the United States Court of Appeals for the Sixth Circuit has jurisdiction over appeals from final decisions pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF ISSUES PRESENT FOR REVIEW</u>

I.    Whether the District Court properly approved the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b) where an overwhelming majority of eligible putative class members opted into the class, those who did not submit a charge of discrimination with the Equal Employment Opportunity Commission would be effectively barred from having any recourse against Defendants for the claims had the District Court not granted final approval final approval, and the Objectors could have opted out of the class had they wanted to pursue a separate claim against the employer hospital.

Plaintiffs-Appellees Answer: "Yes"

II.   Whether the Objectors, who were corralled into opting into the Settlement Agreement by Appellants' counsel, had a valid dispute over the fairness of the Settlement Agreement where every Objector had the right to opt out of the Settlement Agreement and freely pursue their own individual claims against Defendants, but instead nonsensically decided to opt into the Settlement Agreement for the sole purpose of attempting to defy it.

Plaintiffs-Appellees Answer: "No"

III.  Whether the District Court properly approved the Settlement Agreement after finding with the aide of a thorough record and a comprehensive October 5, 2023 Fairness Hearing that the Settlement Agreement was fair, reasonable, and adequate because the Agreement delivers meaningful monetary damages to the Settlement Class that match the economic damages sustained by Class Members, while similar claims all over the country have been dismissed by courts and most class members could not individually pursue a claim on their own.

Plaintiffs-Appellees Answer: "Yes"

## **STATEMENT OF THE CASE AND PROCEDURAL POSTURE**

Appellants are an Indiana law firm that solicited putative class members to opt into the class for the sole purpose of objecting to an amazing nationwide class action settlement that awards full economic damages to thousands of healthcare employees who were temporarily denied a religious accommodation to be exempt from a COVID-19 vaccine mandate.  Both Appellants' initial objections and this subsequent appeal are beyond frivolous since any true desire to oppose the Settlement would have been satisfied by the Appellants simply opting out of the class.  In truth, the Indiana law firm recruited Appellants to opt into the lawsuit so it could pursue its own nationwide class action, even though the Indiana law firm lacks standing to prosecute a nationwide class action and has thus far failed to prevail in any aspect of its own Title VII lawsuit in the United States District Court for the Southern District of Indiana, where it is presently facing a motion to dismiss the lawsuit in its entirety based, in part, on the plaintiffs in *Halczenko, et al, v. Ascension Health, et al* (Case No. 21-cv-02816) failing to allege class claims with the Equal Employment Opportunity Commission.

For this appeal, Appellants have pivoted away from the arguments they made in the District Court and are now throwing everything but the kitchen sink at Plaintiffs-Appellees and Defendants-Appellees on behalf of Appellants who have suffered no injury in fact and had no reason to file objections in the first place.

As for the factual and procedural background, Plaintiffs-Appellees filed their Complaint against Defendants-Appellees on July 12, 2022. Complaint and Jury Demand, RE 1. Plaintiffs-Appellees' Complaint alleged four counts of religious discrimination against Defendants-Appellees under both Title VII of the Civil Rights Act of 1964 and Michigan's Elliot Larsen Civil Rights Act. Complaint and Jury Demand, RE 1. Plaintiffs-Appellees alleged against Defendants-Appellees failure to accommodate religious accommodation requests that resulted in temporary suspensions for an average of five weeks per employee. Complaint, RE 1.

A few months later, the parties participated in a contentious January 13, 2023 settlement conference with Magistrate Judge Berens. Order Regarding Settlement Conference, RE 34. The Settlement Conference originally ended in an impasse. Declaration of Noah Hurwitz, RE 71-2, Page ID # 818. The parties only agreed to the terms of a settlement when Defendants-Appellees later agreed to the final settlement offer that Plaintiffs-Appellees' counsel presented near the end of the January 13, 2023 settlement conference. Declaration of Noah Hurwitz, RE 71-2, Page ID # 818; Declaration of Noah Hurwitz, RE 117-1, Page ID # 1517.

On April 24, 2023, Plaintiffs-Appellees and Defendants-Appellees filed their Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement. Joint Motion for Preliminary Approval, RE 60. The District Court approved the Joint Motion for Preliminary Approval in its entirety on April 26, 2023. Order Granting

Preliminary Approval, RE 63. Specifically, the District Court found "that the settlement is fair, reasonable, adequate, and meets the standards for preliminary approval under Fed. R. Civ. P. 23(a) and (b). Accordingly, the Court preliminarily approves the settlement and all of its exhibits." Order Granting Preliminary Approval, RE 63, Page ID # 575. The Court's Order also scheduled a Fairness Hearing for October 5, 2023 "to consider the final approval of the Settlement." Order Granting Preliminary Approval, RE 63, Page ID # 578.

The court-approved Settlement Agreement emphasizes in plain language that any class member ***has the right to opt out of the Agreement***. *See* Settlement Agreement and Release, RE 60-1, Page ID # 520 ("All class members shall have the right to opt out of the Class at any time during the opt-out period . . . Any Class member who elects to opt out of the Class (i) shall not be bound by any orders or judgments entered in this action."). Of course, without any rational justification, Appellants paradoxically opted into the Class for the sole purpose of objecting to a nationwide lawsuit that would give economic damages to aggrieved class members.

On June 2, 2023, Dr. Paul Halczenko, who is also represented by Appellants' counsel, the Indiana law firm Kroger, Gardis, & Regas, LLP, filed a Motion to Intervene as Plaintiff. Motion to Intervene as Plaintiff, RE 67, Page ID ## 622-628. Dr. Halczenko's Motion to Intervene baselessly attacked Plaintiffs-Appellees' counsel. For example, the Motion to Intervene alleged that Hurwitz Law PLLC and

Jimmy Thomas Law were incapable of "adequately represent[ing] current or former [Ascension] employees" and were also not competent enough to "adequately represent Dr. Halczenko."  Motion to Intervene as Plaintiff, RE 67, Page ID # 622. Dr. Halczenko's counsel levied those accusations against Plaintiff-Appellees' counsel even though at the time Dr. Halczenko filed his Motion to Intervene, Dr. Halczenko's counsel had litigated only two federal lawsuits in employment law matters since January 2022—those two cases being the ones filed against Defendants-Appellees in the United States District Court for the Southern District of Indiana.  Kroger, Gardis, & Regas, LLP Courthouse News Search, RE 71-1.  At the same time, Hurwitz Law had filed 94 religious accommodation denial lawsuits in federal courts in Michigan, Wisconsin, and Illinois.  Declaration of Noah Hurwitz, RE 71-2; Hurwitz Courthouse News Search, RE 71-3.

But most notably, at the time Dr. Halczenko's counsel filed the Motion to Intervene as Plaintiff, Dr. Halczenko *still had the opportunity and the right to opt of out the proposed settlement agreement*.  Response in Opposition to Dr. Paul Halczenko's Motion to Intervene as Plaintiff, RE 71, Page ID # 787.  The District Court for the Western District of Michigan therefore denied Dr. Halczenko's Motion to Intervene because, among other reasons, "intervention is not proper where Proposed Intervenor has the opportunity to object or opt out of the settlement agreement in this matter."  Memorandum Opinion and Order, RE 77, Page ID # 950.

Dr. Halczenko appealed the District Court's denial of his Motion to Intervene to the Sixth Circuit Court of Appeals.  *See* Case 23-1595.  While the Sixth Circuit Court of Appeals has not issued a final ruling in the matter, the Sixth Circuit Court of Appeals did rule on Dr. Halczenko's Emergency Motion for Stay Pending Appeal and to Postpone August 23, 2023 Opt-In/Opt-Out and Objections Deadline and October 5, 2023 Fairness Hearing.  Case: 23-1595, Document 56-1.  The Sixth Circuit Court of Appeals' ruling denied Dr. Halczenko's Motion to Stay in part because "Halczenko fails to clear even our low bar [for intervention] because he has already expressed his intent to opt out of the settlement."  Case: 23-1595, Document: 64, Page: 3.

Later, on August 23, 2023, Appellants filed their Joint Objection to Class Action Settlement on behalf of Shannon Cross, Debra Hughes, Laura Moskwa, Stephanie Payton, Chad Rolles, Freddie Shellnut, Brenda Weiss and Joseph Weiss.  Joint Objection, RE 108.  Appellants' arguments largely mirrored the arguments made before this Court in Appellants' Brief.

A few days later, Appellants filed their Motion for District Court to Authorize Discovery from Objecting Class Members and Set September 15, 2023, as the Deadline for Responses to Attached Discovery.  Objectors' Motion for Discovery, RE 109.  Appellants filed their Motion for discovery even though on August 28, 2023, Plaintiffs-Appellees sought to depose the eight objectors represented by

Appellants' counsel and Appellants' counsel denied the request. Plaintiffs-Appellees' Response in Opposition to Objectors' Motion for Discovery, RE 111, Page ID # 1383. The District Court denied the Objectors' Motion for Discovery in part because "Objectors' argument [for discovery] of insufficient information prior to the fairness hearing is premature, as the deadline for Class Counsel to file evidence in support the request for final approval of the settlement has not passed . . . [f]urther, Objectors provide no factual basis on which their allegations of collusion rest, making such allegations wholly conclusory." Memorandum Opinion and Order denying Objectors' Motion for Discovery, RE 114, Page ID # 1413.

Appellants filed their Objection to the Settlement Agreement after soliciting class members on Facebook to opt into the proposed class action settlement for the sole purpose of filing objections and giving Appellants' counsel a seat at the October 5, 2023 Fairness Hearing. *See* Facebook Posts, RE 105-1. Of course, the Appellants cajoled to be part of this lawsuit by Kroger, Gardis & Regas, LLP asserted objections that ***would have been completely solved and unnecessary if Appellants would have simply opted out of the settlement.*** Instead, Kroger, Gardis & Regas, LLP chose to utilize the eight Appellants as pawns in its strategy to prevent a nationwide class action settlement that stands to benefit thousands of putative class members who would otherwise not have had an opportunity to receive economic damages for the five-week time period where they were suspended as employees. *See* Declaration

6

of Noah S. Hurwitz, RE 117-1; *see also* Declaration of 100 Putative Class Members, RE 117-2.

Despite Appellants' objections, Defendants-Appellees filed their Memorandum in Support of Final Approval of Settlement on September 21, 2023. Memorandum in Support of Final Approval of Settlement, RE 115. Plaintiffs-Appellees filed their Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses the same day. Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses, RE 117. Both parties emphasized in their respective pleadings that continued litigation through trial would be extremely onerous and costly and that the Settlement Agreement presented a fair solution to thousands of putative class members. *See* Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses, RE 117, Page ID # 1497.

Plaintiffs-Appellees and Defendants-Appellees also filed their respective responses to Appellants' Objections. Defendant-Appellees' Supplemental Memorandum Addressing Objections and Opt-Outs, RE 119; Plaintiffs' Response to Joint Objection, RE 121. Both briefs addressed several issues but most notably, Plaintiffs-Appellees and Defendants-Appellees both strongly re-emphasized that there was no collusion between counsel despite Appellants' counsel's repeated accusations. *See* Plaintiffs' Response to Joint Objection, RE 121, Page ID # 1787.

7

On October 5, 2023, the Honorable Jane M. Beckering conducted an in-person Fairness Hearing.  Fairness Hearing Minutes, RE 132, Page ID # 2342.  After hearing from Plaintiffs-Appellees, Defendants-Appellees, and Appellants, Judge Beckering rightfully found that "the Settlement Agreement is fair, reasonable, and adequate, and that the Fed. R. Civ. P. 23 requirements to certify the class are met."  October 6, 2023 Order, RE 134, Page ID # 2345.  Judge Beckering's October 6, 2023 Order also awarded Class Counsel one-third of the Settlement Fund after the deduction of costs.  *Id.*

Thereafter, on November 2, 2023, Judge Beckering issued a Final Order and Judgment.  Final Order and Judgment, RE 138.  The Final Order affirmed the reasonableness of the Settlement Agreement, stating in part "after review of the Settlement Agreement, briefing, and argument of the parties and objectors . . . the settlement is fair, reasonable, and adequate; that the settlement was negotiated at arms-length as a result of good-faith negotiations by counsel who fairly and adequately represented the interest of the Class and Defendants; that the settlement was not the product of fraud or collusion; and that all requirements for approval of the settlement under Fed. R. Civ. P. 23 have been met."   Final Order and Judgment, RE 138, Page ID # 2428.

Appellants filed their Notice of Appeal on November 10, 2023, stating in part that Appellants are appealing "the District Court's November 2, 2023, Final Order

and Judgment in this case and all orders that merge therein." Amended Notice of Appeal, RE 140, Page ID # 2439.

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion when it issued final certification of a Settlement Class consisting of current and former employees of Defendants-Appellees who were denied religious accommodation and at least temporarily relieved from their work duties where an overwhelming majority of putative class members supported the Settlement Agreement so strongly that only 7% of the eligible putative class members excluded themselves from the Settlement, and only nine putative class members objected to the Agreement (and eight of those nine did so at the behest of Appellants' counsel).

The District Court also did not abuse its discretion when it approved a Settlement Agreement that compensates thousands of putative class members for the entirety of the five weeks (*i.e.*, full economic damages) during which they were wrongfully suspended by Defendants-Appellees after being denied religious accommodation requests, including putative class members who did not submit an EEOC Charge of Discrimination and would therefore be left with no recourse against Defendants-Appellees, absent the approval of the Settlement Agreement. Of course, the Settlement Agreement allowed putative class members to opt out of the Settlement Agreement, which is why Appellants' objections are nonsensical.

## <u>STANDARD OF REVIEW</u>

"[A] district court's class-certification decision calls for an exercise of judgment." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011). Accordingly, the Sixth Circuit Court of Appeals reverses a district court's class-certification decision "only if the district court abused its discretion or applied an erroneous legal standard." *Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013); *see also Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 457 (6th Cir. 2020) ("[w]e review a district court's decision of whether to certify a class under the abuse-of-discretion standard."). *In re Whirlpool Corp.* best summarized the Sixth Circuit's standard for reviewing a district court's class action certification:

> A district court has broad discretion to decide whether to certify a class. This court has described its appellate review of a class certification decision as narrow and as very limited. We will reverse the class certification decision in this case only if [the appellant] makes a strong showing that the district court's decision amounted to a clear abuse of discretion. An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. ***We will not find an abuse of discretion unless we reach a definite and firm conviction that the district court committed a clear error of judgment***.

*In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). Likewise, a district court's approval of a settlement "is

discretionary . . . and will be overturned only by a showing of abuse of discretion."

*Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009).

**ARGUMENT**

## I.   THE CLASS WARRANTED FINAL CERTIFICATION.

On April 26, 2023, the District Court issued an Order Granting Preliminary

Approval to the Class Action Settlement.  Order Granting Preliminary Approval, RE

63.  The Class, defined for settlement purposes, consisted of:

> All Ascension Associates for whom all of the following
> apply: (a) the Associate applied for a religious exemption
> to the COVID-19 Vaccination Policy and has a sincerely
> held religious belief that conflicted with the COVID-19
> Vaccination Policy; and (b) the Associate was denied the
> requested religious exemption, and (c) the Associate either
> (i) was suspended or otherwise removed from employment
> by Ascension in November 2021 or (ii) claims they were
> forced to leave their employment with Ascension before
> February 28, 2022, after and as a result of their denied
> religious exemption to the COVID 19-Vaccination Policy.
> Order Granting Preliminary Approval, RE  63, Page ID #
> 576.

The Order granting preliminary approval expressly stated "[e]xcluded from this

Class are ***all persons who elicit to exclude themselves*** from the Class by filing a

timely Exclusion Form with the Claims Administrator or any person who does not

meet the class definition above."  Order Granting Preliminary Approval, RE  63,

Page ID # 576.  The Order also certified the Settlement Class and appointed Class

Counsel  and  the  following  Plaintiffs-Appellees  as  Class  Representatives:  Lynn

11

Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard. Order Granting Preliminary Approval, RE 63, Page ID # 577. Finally, in the Order, the District Court properly analyzed the propriety of certification under Rule 23(a) and 23(b) and correctly conditionally certified the Class for settlement purposes pursuant to Federal Rules of Civil Procedure Rules 23(a) and (b). Order Granting Preliminary Approval, RE 63, Page ID # 575.

Appellants' Brief nevertheless takes issue with the fact that "the district court did not conduct [a] hearing on preliminary approval of the Settlement" and alleges that the District Court's "failure to appreciate the scope of its duties to absent class members and to conduct a preliminary hearing quickly sent this case down the wrong track." Case 23-1996, Document: 29, Page: 40. But the Federal Rules of Civil Procedure do not require a hearing before preliminary certification, and Appellants' Brief cited no binding case law to support its proposition that preliminary approval "requires a hearing." Case 23-1996, Document: 29, Page: 40. Rather, "[t]here are two steps for approving class settlements: '(1) preliminary approval of the settlement and the content and method of class notice' and (2) final approval after notice and a fairness hearing.'" *Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 540 (E.D. Mich. 2023). "[A]t the preliminary approval stage, the issue is whether the Agreement 'is fair enough . . . to expend the efforts and costs associated with sending potential class members notice and processing opt-outs and objections.'" *Id.*

12

(quoting *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).   Settlement agreements are often preliminarily approved as long as the agreement "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatments to class representatives or of segments of the class, or excessive compensation for attorneys" and as long as the settlement agreement "appears to fall within the range of possible approval" at the final-approval stage. *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010).

Here, it is immaterial whether the District Court conducted a hearing before preliminarily approval because prior to issuing preliminary approval, the District Court conducted a thorough review of the record sufficient to forego any hearing:

> The Court has reviewed the Motion [for Preliminary Approval] and the Accompanying Brief. The Court has also reviewed the record in this case and has concluded the proposed settlement is not the product of fraud or collusion. As a result, the Court has preliminarily determined that the proposed settlement meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. Order Granting Preliminary Approval, RE 63, Page ID # 575.

Further, Appellants' allegation that "FRCP 23(e)(1)(A) and (B) . . . indicate[s]" that a hearing on the issue of preliminary approval is necessary is blatantly false. *See* Fed R. Civ. P. 23(e)(1)(A); Fed. R. Civ. P. 23(e)(1)(B).

## II.    THE DISTRICT COURT PROPERLY REVIEWED THE PROPOSED NATIONWIDE SETTLEMENT.

"The Federal Rules of Civil Procedure require court approval of settlements in class actions." *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11-14275, 2013 WL 692856, at *1 (E.D. Mich. Feb 26, 2013) (quoting Fed. R. Civ. P. 23(e)). Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e) further provides "that a settlement that would bind class members may be approved 'only after a hearing on and finding that is fair, reasonable, and adequate.'" *Halliday*, 2013 WL 692856, at *1 (quoting Fed. R. Civ. P. 23(e)). Courts within the Sixth Circuit acknowledge the strong "federal policy favoring settlement of class actions." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

"Rule 23(e)(2) states that a settlement that would bind class members may be approved 'only after a hearing and on finding that it is fair, reasonable, and adequate.'" *Halliday*, 2013 WL 692856, at *1. The Rule 23(e) factors are: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, and finally whether there

14

is any agreement required to be identified under Rule 23(e)(3) and; (D) whether the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

In addition to the Rule 23(e)(2) factors, courts within the Sixth Circuit weigh these additional factors when determining whether to issue final approval of a settlement agreement: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *Int'l Union*, 497 F.3d 615 at 631; *see also Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).  Here, the District Court correctly held after weighing the above factors that the Settlement Agreement [RE 60-1] "is fair, reasonable, and adequate":

> [T]he settlement was negotiated at arms-length as a result of good faith negotiations by counsel who fairly and adequately represented the interest of the Class and Defendants; that the settlement was not the product of fraud or collusion; and that all requirements for approval of the settlement under Fed. R. Civ. P. 23 have been met for the reasons set forth on the record [at the October 5, 2023 fairness hearing] . . . including the requirements in *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).  Final Order and Judgment, RE 138, Page ID # 2428.

Nevertheless, Appellants argue that the District Court failed to adequately scrutinize the Agreement before it issued a final approval.  Case 23-1996, Document: 29, Page: 34.  Specifically, Appellants argue that "[s]ettled law reflects that a district court must apply a heightened scrutiny to a proposed class action settlement when certain factors are present."  Case 23-1996, Document: 29, Page: 34.  But Appellants cite no binding law in support of that proposition.  *Id.*  Rather, Appellants simply rephrase in a more favorable light the factors that a district court should consider when determining whether to approve a settlement.  Case 23-1996, Document: 29, Page: 35.  For the reasons set forth below, each factor the District Court weighed in its assessment of final approval supports the fairness, reasonableness, and adequacy of the Agreement.  The District Court therefore did not fail to apply a heightened standard, but rather properly weighed the factors.

### A.    The Rule 23(e)(2) Factors Weighed in Favor of Approval.

#### 1.    Class Counsel Adequately Represented the Class and the Agreement Provides Adequate Relief.

Mr. Hurwitz, owner of Hurwitz Law PLLC, has vast experience in the employment law realm.  Indeed, prior to managing Hurwitz Law PLLC, which operates exclusively in the employment law space, Mr. Hurwitz was a member of the Labor and Employment Group at Dykema Gossett PLLC and Senior Counsel for Employment Law at a Fortune 500 company.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 2.  When Plaintiffs-Appellees filed their Memorandum of Law in

Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses [RE 117], Mr. Hurwitz was overseeing a voluminous case load of at least 250 religious accommodation denial lawsuits. Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 2.  To secure this Settlement, Hurwitz Law PLLC and Jimmy Thomas Law combined resources to adequately serve the needs of over 400 putative class members and named Plaintiffs in Michigan.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 2.  And Hurwitz Law PLLC and Jimmy Thomas Law proved their worth by securing for putative class members a nationwide settlement to recover an amount equal to the compensation lost during the suspensions at issue in the face of Defendants-Appellees' argument that the suspensions were warranted based on unvaccinated putative class members posing an "undue hardship" on the business, which at the time of the filing of this lawsuit needed only to be a "*de minimis* undue hardship" pursuant to *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

Here, Plaintiffs-Appellees' Third Amended Complaint alleged that "Plaintiffs and Class Members were gradually recalled to work beginning approximately five (5) weeks later due to 'legal challenges' and 'staffing challenges.'"  Third Amended Complaint, RE 65, Page ID # 602.  Because Class Members were suspended for five weeks on average, Class Members missed out on five weeks of pay.  The Settlement

17

Agreement allows Class Members who submit a valid claim to receive up to five weeks of pay (*i.e.* Class Members' full economic damages) for the time the Class Member was suspended from work. Settlement Agreement and Release, RE 60-1, Page ID ## 502-503.

By achieving a settlement that compensates thousands of putative class members for the entirety of the five weeks (*i.e.*, full economic damages) during which they were suspended by Defendants-Appellees after being denied religious accommodation requests, it is indisputable that Class Counsel more than adequately represented the class and its interests. Moreover, Class Counsel insured relief for hundreds (if not thousands) of individuals who would otherwise be left without recourse because they did not timely file charges of discrimination with the Equal Employment Opportunity Commission against Defendants-Appellees, thereby failing to timely exhaust the administrative remedy that is necessary to prosecute a claim for failure to accommodate a religious belief under Title VII of the Civil Rights Act. Declarations of 100 Putative Class Members, RE 117-2. In fact, prior to the October 5, 2023 Fairness Hearing, 100 Class Members attested that the Agreement is likely their only recourse for a recovery against Defendants-Appellees. *Id.*

Additionally, the minimal number of opt-outs and objections demonstrate the Settlement Agreement's adequacy. Of the estimated 3,000 eligible putative class members, the Settlement Administrator has indicated that 2,703 putative class

members opted into the settlement, which is an astoundingly supportive 90.1% of estimated class members. Declaration of Claims Administrator, RE 117-5. And only nine of those members have objected to the Agreement, of which eight objected at the behest of Appellants' counsel. *See* Plaintiffs-Appellees' Response in Opposition to Dr. Paul Halczenko's Motion to Intervene as Plaintiff, RE 71; Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Motion to Strike Previously Corrected False Allegations in the Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Emergency Motion for Stay Pending Appeal, RE 105. Finally, of the approximately 4,576 eligible putative class members, less than 7% excluded themselves from the Agreement. Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1520. Such strong support from putative class members speaks to the adequacy of the Agreement.

And as this Court is likely aware, the prerogative of an employer to require that employees receive the COVID-19 vaccine and deny religious accommodation as an "undue hardship" is being hotly contested in this Circuit and abroad. Courts have held that it would impose an undue hardship on hospital employers to employ unvaccinated employees. See *Does 1-6 v. Mills*, 16 F.4th 20, 35-36 (1st Cir. 2021) ("hospitals need not provide [a COVID-19 vaccination] exemption . . . because doing so would cause them to suffer undue hardship." Conversely, the Fifth Circuit in *Hebrew v. Texas Dep't of Crim. Just.*, No. 22-20517, 2023 WL 5989580, at *6 (5th

Cir. Sept. 15, 2023) opined that the United States Supreme Court's "decision in *Groff* enables Americans of all faiths to earn a living without checking their religious beliefs and practices at the door," when it reversed a lower court's religious accommodation claim based on the employer's claim of an "undue hardship."

And recently, courts in the Eastern District of Michigan have begun to apply a heightened pleading standard to complaints alleging religious discrimination without allowing plaintiffs the opportunity to further espouse their religious beliefs during discovery. *See Sturgill v. Am. Red Cross*, No. 2:22-CV-11837, 2023 WL 8701293 (E.D. Mich. Dec. 15, 2023). Yet, other courts in the same district have followed long-standing Supreme Court guidance and held that "an employee need not request an accommodation in a particular manner to notify his employer of his need for a religious accommodation and trigger the employee's Title VII obligation to reasonably accommodate an employee's religious practices." *Brown v. MGM Grand Casino*, No. 22-12978, 2023 WL 5489023, at *2 (E.D. Mich. Aug. 24, 2023).

In sum, there is not clear authority to either bolster Plaintiffs-Appellees' claims or support Defendants-Appellees' defenses, which justifies the kind of compromise achieved by virtue of this settlement in which Class Members are receiving economic damages but foregoing the battle for other damages.

### 2.    The Agreement was Contentiously Negotiated at Arms-Length.

At both the District Court level and at the Appellate level, Appellants' counsel

has repeatedly levied accusations of fraud and collusion against counsel for Plaintiffs-Appellees and Defendants-Appellees. *See* Combined Response to Motion and Memoranda of Proposed Class Counsel and Ascension Urging Approval of Settlement, RE 130, Page ID # 2287 (Appellants' counsel alleges "an extremely high risk of collusion and the possibility of a 'reverse auction' through the settlement in this case."); *see also* Emergency Motion to Set Aside or Stay Court's April 26, 2023, Preliminary Order Approving Nationwide Class Settlement, RE 68, Page ID # 656. But as Plaintiffs-Appellees and Defendants-Appellees have explained numerous times, the Settlement Agreement was contentiously negotiated at arms-length.

Indeed, on January 13, 2023, the parties participated in a contentious settlement conference with Magistrate Judge Berens. Order Regarding Settlement Conference, RE 34, Page ID # 245-247. The settlement conference resulted in an impasse. Declaration of Noah Hurwitz, RE 71-2, Page ID # 818. The parties only agreed to the terms of a settlement when Defendants-Appellees later agreed to the final settlement offer that Plaintiffs-Appellees' counsel presented at the settlement conference. Declaration of Noah Hurwitz, RE 71-2, Page ID # 818; Declaration of Noah S. Hurwitz, RE 117-1. Page ID # 11. Further, when Dr. Halczenko (represented by the same counsel as Appellants) filed his Motion to Intervene as Plaintiff, Hurwitz Law PLLC was serving as plaintiff's counsel in at least four highly contested lawsuits in which Defendants-Appellees' counsel, Jackson Lewis P.C.,

was serving as defense counsel.  Declaration of Noah S. Hurwitz, RE 71-2, Page ID # 818.  Considering these facts, the District Court correctly held that Appellants' collusion allegations were "wholly speculative and conclusory."  Memorandum Opinion and Order, RE 77, Page ID # 953.

### 3.    The Agreement Treats Class Members Equally Relative to Each Other.

The Agreement treats all class members equally because each class member who opts-in to the Settlement Agreement will receive up to five weeks pay, less attorney fees, depending on the duration of each class members' individual suspension.  *See* Settlement Agreement and Release, RE 60-1, Page ID ## 503-504. No one category of employee is treated any better under the Settlement Agreement than any other category of employee.  The only distinct factor in determining each individual class member's settlement figure is the average salary of the class member's position within the class member's state of residence.  *See* Settlement Agreement and Release, RE 60-1, Page ID ## 502-503.

### B.    The Sixth Circuit Factors Weigh in Favor of Approval.

### 1.    There was no Fraud or Collusion Between Counsel.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) ("Absent evidence of fraud or collusion, such

settlements are not to be trifled with."); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) ("The Court must also make sure that any settlement is the product of arm's length negotiations as opposed to collusive bargaining."); *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

Here, as explained above, Appellants' counsel has levied baseless collusion allegations, but Appellants' assertions are absurd and illusory. It is undisputed that the parties participated in a court-sanctioned contentious settlement conference before the Honorable Sally J. Berens that ended in an impasse (Order Regarding Settlement Conference, RE 34, Page ID # 245-247). Moreover, Hurwitz Law PLLC has engaged in several other contentious litigations against Jackson Lewis P.C. involving religious accommodation claims, and one of those matters (*Lucky*) was dismissed and is on appeal with this Court. *See Brown, et al v. MGM Grand Casino*, Case No. 22-cv-12978; *Bass v. T-Mobile USA, Inc.*, Case No. 22-cv-11975; *Allen v. Henry Ford Health System*, Case No. 22-cv-10705; *Lucky v. Landmark Medical of Michigan, P.C.*, Case No. 22-cv-11827; *Johnson v. American Society for Prevention of Cruelty to Animals*, Case No. 23-cv-10018; *Ramirez v. Walker Miller Energy Services*, Case No. 23-cv-11405; and *Flueck v. T-Mobile USA Inc.*, Case No. 23-cv-

486. And when Defendants-Appellees eventually accepted the final settlement offered by Plaintiffs-Appellees' counsel following the settlement conference, it was without any additional settlement communications between the parties.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1517.

### 2. Litigation Through Trial Would Be Onerous.

In evaluating a proposed settlement, the Court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal.  *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *4 (W.D. Tenn. Aug 2, 2016) (*citing Int'l Union*, 497 F.3d at 631; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)).  Most class actions "are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."  *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).

This class action is no different.  Defendants-Appellees asserted numerous defenses in response to Plaintiffs-Appellees' Complaints.  *See, e.g.*, Answer to Plaintiffs' First Amended Complaint, Affirmative Defenses, and Reliance Upon Jury Demand, RE 26.  Moreover, Defendants-Appellees initially filed a Motion to Dismiss pursuant to Rule 12(b)(6) and/ or Fed R. Civ. P. 12(c) arguing that Plaintiffs-Appellees' Second Amended Complaint should be dismissed because "Plaintiffs fail to state a legally cognizable claim."  Motion to Dismiss, RE 38, Page ID # 287.

24

Plaintiffs-Appellees feel confident in their claims and are determined that, if necessary, Plaintiffs-Appellees would defeat Defendants-Appellees' Motion to Dismiss. But nevertheless, the parties would then need to engage in discovery with a myriad of legal obstacles due to (a) the new "undue hardship" standard; (b) the fact that Defendants-Appellees provide healthcare services; (c) having to meet class action requirements of commonality and typicality across state lines; and (d) having to satisfy the procedural prerequisites of a Title VII claim. The Settlement Agreement avoids the above time and expense by allowing for a prompt resolution of this action on terms that are fair, reasonable, and adequate for all Class Members. The Settlement Agreement will help Class Members (and Defendants-Appellees) put this issue behind them years earlier than if the case proceeded to discovery, trial, and even possibly an appeal. Ultimately, the Settlement Agreement provides certainty.

### 3.    The Parties Engaged in Some Discovery.

The Third Factor weighed by Sixth Circuit courts is "the amount of discovery engaged in by the parties." *Int'l Union*, 497 F.3d at 631. Here, Plaintiffs-Appellees issued written discovery requests to Defendants on or about December 1, 2022. However, before responses were served, the parties participated in an early settlement conference on January 13, 2023. Order Regarding Settlement Conference, RE 34, Page ID # 245-247. After Defendants-Appellees accepted the final settlement offer made by Plaintiffs-Appellees, the parties had no need for

additional discovery and/or depositions.  However, efforts made by counsel on both sides to be fully apprised of the factual circumstances through informal discovery allowed for sound decision-making.

Appellants' Brief argues that "[t]he absence of data supporting the Settlement alongside the lack of any discovery in the case should have led the court to determine the parties did not carry their burden to establish the Settlement's reasonableness." Case 23-1996, Document: 29, Page: 36.  But as explained above, the parties did not agree on a settlement through any sort of nefarious process.  Rather, the parties settled the case *after a settlement conference with a United States Magistrate Judge*.  Just because the parties settled the case at an early settlement conference before the sides exchanged discovery does not mean the Settlement Agreement is somehow compromised.  And the parties were able to settle prior to class certification prior to discovery for the same reason—the early settlement conference.

### 4.    Plaintiffs-Appellees Would Be Prejudiced by No Settlement.

The fourth factor courts weigh is "the likelihood of success on the merits." *Int'l Union*, 497 F.3d at 631.  As discussed above, if this case were to continue, Defendants-Appellees would likely re-file their Motion to Dismiss.  Motion to Dismiss, RE 38.  Additionally, discovery poses great uncertainty.  As previously explained in Plaintiffs-Appellees' Response in Opposition to Defendants-Appellees' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss

Second Amended Complaint, the key event initiating this lawsuit occurred nearly three years ago, on July 27, 2021, when Defendants-Appellees initially announced their COVID-19 vaccine mandate.   Response in Opposition to Defendants-Appellees' Motion to Stay Discovery, RE 48.   The delay caused by the settlement discussions as well as any additional delay would be detrimental to Class Members. For example, Plaintiffs-Appellees would wish to depose several of Defendants-Appellees' employees and decision-makers in discovery.   The personal knowledge of those individuals has faded with the matter being paused for settlement.

Moreover, Defendants-Appellees hinted in their Motion to Stay that they planned on objecting to several of Plaintiffs-Appellees' discovery requests.   Motion to Stay Pending Discovery, RE 42, Page ID # 306.   Defendants-Appellees even acknowledged in their Motion to Stay that the objections will "result in legal challenges."   Motion to Stay Pending Discovery, RE 42, Page ID # 306.   If this lawsuit were to continue absent final certification, Plaintiffs-Appellees would suffer even further prejudice because Plaintiffs-Appellees would need to wait for the District Court to rule on Defendants-Appellees' Motion to Dismiss and on additional motions regarding Defendants-Appellees' discovery objections.   And this is all before the certification of a litigation class and the summary judgment stage.   Here, the risk to Plaintiffs-Appellees of the case getting dismissed, the additional expenses involved with litigating an action on behalf of hundreds of individuals, and further

delay would prejudice Plaintiffs-Appellees.

Finally, Plaintiffs-Appellees would be further prejudiced if the case proceeded because many putative class members did not timely file a charge of discrimination with the EEOC and would therefore likely be left unable to prosecute a Title VII claim against Defendants-Appellees if this case were to continue.  Declaration of Noah S. Hurwitz, RE 117-1; Declarations of 100 Putative Class Members, RE 117-2.  And during the Settlement Agreement's notice period, Plaintiffs-Appellees' counsel learned that most putative class members did not even know of the administrative requirement to file a charge of discrimination with the Equal Employment Opportunity Commission in order to eventually prosecute a Title VII claim.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1519.  Meaning, if this case were to continue, thousands of Class Members would potentially have no recourse against Defendants-Appellees.  The Settlement Agreement, on the other hand, provides certainty to all Class Members who did not opt out.

### 5.   Class Counsel and Representatives Support Settlement.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."  *In re Regions*, 2016 WL 8290089, at *6 (*citing Thacker*, 695 F. Supp. 2d at 532-33)); *see also Vukovich*, 720 F.2d 909 at 922–23 ("[T]he court should defer to the judgment of

experienced counsel who has competently evaluated the strength of his proofs."). Here, both Class Counsel and Class Representatives support the Settlement Agreement. Declaration of Noah S. Hurwitz, RE 117-1; Declarations of 100 Putative Class Members, RE 117-2; Notice of Class Representative Declarations, RE 122.

Defendants-Appellees' counsel also demonstrated their support for the Settlement Agreement in the Joint Motion for Settlement by stating "Defendants' counsel, who are experienced in litigation and resolution of class actions, had sufficient information to evaluate the strength of Plaintiffs' claims. Thus, all Parties and their counsel agree that Plaintiffs' and Defendants' counsel have engaged in an independent evaluation of the strengths and weaknesses of their respective claims and defenses and believe that entering into this settlement is in the best interests of Plaintiffs." Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement, RE 60, Page ID # 462.

### 6.    Absent Class Members Support the Agreement.

The Sixth factor courts weigh is "the reaction of absent class members." *Int'l Union*, 497 F.3d at 631. In typical class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Agreement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding

that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, ***only nine class members objected to the Agreement*** (and eight of those nine were solicited to do so). *See* Facebook Posts, RE 105-1; Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1518. Moreover, 2,703 of the putative class members who received notice opted into the Agreement. Because the total number of putative class members was far less than the number of mailings, most putative class members opted into the Agreement.

### 7.    The Agreement Aligns with Public Interest.

The final Sixth Circuit factor for approval is "public interest." *Int'l Union*, 497 F.3d at 631. In the Sixth Circuit, "[c]ourts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."). Here, the Settlement Agreement aligns with public interest and also ensures the conservation of judicial resources because the parties will not need to continue what would be contentious litigation.

## III.    THE *HALCZENKO* CASE WAS NOT THE "FIRST FILED."

Appellants' counsel has previously alleged that the *Halczenko* case was filed before the instant Class Action.  *See* Joint Objection to the Class Action Settlement, RE 108, Page ID # 1318 (the "*Halczenko* case in Indiana was filed 8-months before [the instant class action], entitling the *Halczenko* plaintiffs to request dismissal or transfer under the first-to-file rule.").  But as Plaintiffs-Appellees pointed out in their Response [Brief in Support of Plaintiffs' Response to Joint Objections, RE 121, Page ID # 1782], Hurwitz Law PLLC assisted Ascension employees in filing EEOC charges even before the *Halczenko* case had been filed, thus fulfilling an administrative prerequisite to a Title VII claim that Appellants' counsel initially skipped.  EEOC Charges, RE 121-1.  Indeed, it was weeks after Hurwitz Law PLLC submitted charges of discrimination to the EEOC that Appellants' counsel filed an unsuccessful complaint for a temporary restraining order and preliminary injunction. *Halczenko* Complaint, RE 121-2.  *Halczenko* attempted to bypass the EEOC administrative process.  But it was not until after Plaintiffs-Appellees in the present action field their Complaint on July 12, 2022, **complete with EEOC right to sue letters**, that Appellants' counsel in *Halczenko* filed a Second Amended Complaint on August 25, 2022.  *Halczenko* Second Amended Complaint, RE 121-3.

Now, Appellants argue that Plaintiffs-Appellees' counsel "breached a duty owed by counsel . . . to absent class members and the court" by not "notifying the

court about earlier filed similar cases." Case: 23-1996, Document: 29, Page ID # 48. But it is absurd for Appellants to argue that the *Halczenko* case was the "first to file" because filing a deficient, unsuccessful motion for injunctive relief without properly submitting mandatory EEOC chargers cannot confer preferential status on the *Halczenko* plaintiffs. Before Halczenko filed his complaint, Hurwitz Law PLLC was going about the litigation process in a more competent manner, apprising the EEOC of Defendants' religious accommodation policy, and doing everything necessary to properly advance a class action settlement.

## IV.    THE COURT'S TEMPORARY INJUNCTION WAS PROPER.

"A court's ability to issue injunctions, and then enforce those injunctions . . . springs from the court's inherent equitable powers." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544 (6th Cir. 2014) (internal citation omitted). Appellants' Brief argues that "[b]y not providing notice of the injunction to class members with pending lawsuits in other states class counsel breached their fiduciary duty to the class and induced the district court's non-compliance with FRCP 65." Case: 23-1996, Document: 29, Page ID # 47. Appellants' Brief also argues that "class members in the federal cases in Indiana and Wisconsin should have received notice of the requested anti-suit injunction." But the Preliminary Approval Order did not permanently enjoin all Class Members from pursuing their claims against

Defendants-Appellees. *See* Preliminary Approval Order, RE 63. Rather, the

Preliminary Approval Order contained a paragraph stating:

> ***Pending final determination*** of the joint application for
> the approval of this Settlement Agreement, all proceedings
> in this Litigation other than settlement approval
> proceedings shall be stayed and all Class Members who do
> not validly request exclusion from the Class shall be
> enjoined from commencing, continuing, or prosecuting
> any action, suit, proceeding, claim, or cause of action in
> any court or before any tribunal based on any of the claims
> at issue in this matter. Preliminary Approval Order, RE
> 63, Page ID # 582.

The Preliminary Approval Order simply stays court proceedings pending final

approval of the Settlement Agreement. And under the plain language of the

Preliminary Approval Order, ***those who exclude themselves from the Settlement***

***Agreement are free to continue their claims against Defendants-Appellees once a***

***final determination regarding the Settlement Agreement has been issued***.

Preliminary Approval Order, RE 63, Page ID # 582. Any Class Member who opted

out of the Settlement Agreement was therefore free to pursue litigation against

Defendants-Appellees once a final determination had been made.

It is also disingenuous for Appellants' counsel to argue that "class members

in the federal cases in Indiana and Wisconsin should have received notice of the . . .

anti-suit injunction and [had] and opportunity to be heard." Case: 23-1996,

Document: 29, Page ID # 48. For one, Appellants' counsel has been aware of this

litigation since "at least 2022." Defendants' Response to Dr. Paul Halczenko's

33

Motion to Intervene as Plaintiff, RE 67, Page ID # 929.  Moreover, on April 28, 2023, "in accordance with this Court's preliminary approval order enjoining class members from continuing other litigation, Ascension moved to stay both the *Halczenko* and the *Applegate* matters."  Defendants-Appellees' Response to Dr. Paul Halczenko's Motion to Intervene as Plaintiff, RE 67, Page ID # 929.  Notably, Appellants' counsel waited *35 days* before attempting to intervene in the instant litigation after Defendants-Appellees moved to stay the *Halczenko* and the *Applegate* matters.  Defendants' Response to Dr. Paul Halczenko's Motion to Intervene as Plaintiff, RE 67, Page ID # 929.

The bottom line is that ***Appellants had the opportunity to be heard regarding the Court's Preliminary Approval Order*** despite their allegations. *See* Case: 23-1996, Document: 29, Page ID # 48; *see County Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 484 (6th Cir. 2002) (the party "set forth substantive arguments on the merits of the injunction, contending that it should not have been issued . . . These are essentially the same arguments he makes on appeal. ***We therefore conclude that the district court's consideration of Betzold's motion to dissolve constituted a hearing on whether an injunction should issue***."); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (holding that where legal . . . issues are in dispute, ***the notice requirement of Rule 65(a)(1) does not require an oral hearing, and that the court's consideration of legal memoranda may constitute a hearing***.").  In fact, Appellants'

counsel raised the same issues present here in Appellants' Joint Objection. *See* Joint Objection, RE 108, Page ID # 1321. Moreover, Appellants' counsel raised the issues during the October 5, 2023 Fairness Hearing. Appellants therefore had the opportunity to be heard as to whether the Preliminary Approval Order should have included a temporary, conditional injunction on other litigation against Defendants-Appellees. For these reasons, the District Court did not abuse its discretion when it issued the Preliminary Approval Order.

## V.    AMENDED COMPLAINTS FOR SETTLEMENT PURPOSES ARE COMMON PRACTICE.

Appellants argue that "conditional complaints are not authorized by the FRCP and, because they can be unilaterally withdrawn, are insufficient to satisfy the standing and case or controversy requirements of Article III." Case 23-1996, Document: 29, Page ID # 52. But Appellants cite no case law in support of that proposition. And parties regularly file Amended Complaints for the purposes of Settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 514 (E.D. Mich. 2003) ("The Plaintiff States' Third Amended Complaint was filed in January 2003 solely for the purposes of this Proposed Settlement.")

Moreover, the Preliminary Approval Order expressly states that "[i]f the Settlement Agreement is not finally approved, this Preliminary Approval Order shall be rendered null and shall be vacated . . . [I]n addition, the Third Amended Complaint shall be dismissed and deemed void ab initio." Preliminary Approval Order, RE 63,

Page ID # 581.  There is therefore no confusion about "whether the complaint would be 'the operative pleading' or a 'guide to understanding the terms of the settlement'" because the Preliminary Approval Order expressly states that "[i]f the Settlement Agreement is not finally approved . . . [t]his action shall thereupon revert immediately to their respective procedural and substantive status prior to the date of the execution of the Settlement Agreement."  Preliminary Approval Order, RE 63, Page ID # 581.  The Second Amended Complaint would therefore have been the operative pleading had the Settlement Agreement not been approved.

## VI.   PUTATIVE CLASS MEMBERS WERE FREE TO OPT OUT OF THE AGREEMENT AND PURSUE CLAIMS OF THEIR OWN.

The Settlement Agreement makes clear that any class member has the right to opt out of the Agreement.  *See* Settlement Agreement and Release, RE 60-1, Page ID # 520 ("All class members shall have the right to opt out of the Class at any time during the opt-out period . . . Any Class member who elects to opt out of the Class (i) shall not be bound by any orders or judgments entered in this action."). Nevertheless, Appellants' Brief alleges "[n]o data permitted the . . . class members to weigh the value of all claims of the class against the anticipated payout under the settlement," Case: 23-1996, Document: 29, Page ID # 54, and that the Settlement Agreement is unfair to Appellants because "all eight Objectors were out of work for longer than 5-weeks," and Appellants' Brief also alleges that "[t]he failure to use real wage data adversely impacts employees with more seniority . . . and therefore more

highly compensated." Case 23-1996, Document: 29, Page ID ## 58-63. Appellants have several other issues with the "fairness" of the Settlement Agreement.

But Appellants miss the point. Any Class Member who was dissatisfied with the data supporting the Settlement Agreement or the payout structure offered by the Settlement Agreement was free to opt-out of the Settlement Agreement and pursue their own claims against Defendants-Appellees. Settlement Agreement and Release, RE 60-1, Page ID # 520. All Class Members had access to Preliminary Approval Order, the Claim, and most importantly, the Exclusion form. Declaration of Claims Administrator, RE 115-3, Page ID # 1457. Moreover, as Appellants' counsel admits, the 5-weeks average weekly wages cap "may be just fine for those who were out 5-weeks pay or less and returned to their jobs" before stating that the Agreement "is not fine or fair to many, including multiple Objectors." Case: 23-1996, Document: 29, Page ID # 60. Of course, the Objectors could have opted out had they believed the Settlement Agreement was not "fair" to them.

## VII. THE ATTORNEYS' FEES ARE REASONABLE.

Finally, Appellants clam that the "one-third of the common fund fee award is an unusual choice in a case only on file about nine months at the time of the settlement and in which there was no discovery." Case: 23-1996, Document: 29, Page ID # 66. But as explained in Plaintiffs-Appellees' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement,

Attorneys' Fees, and Litigation Expenses, one-third of the Settlement Fund is totally appropriate for a class action of this size. Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses, RE 117.

In fact, the parties' Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement stated "[u]nder the Settlement Agreement, Class Counsel will receive up to one-third of the Total Settlement Fund for Attorney Fees and Costs for all current and future services provided in this matter subject to approval or modification by the Court." Joint Motion for Preliminary Approval, RE 60, Page ID # 455. Moreover, the Joint Motion stated "Defendants have agreed not to object to the award of the fees and costs up to the amount stated in the Settlement Agreement." Joint Motion for Preliminary Approval, RE 60, Page ID # 455. Based on the incredible risk borne by Plaintiffs' counsel in prosecuting a Title VII class action lawsuit with over 100 named plaintiffs, involving novel legal issues, prelitigation administrative hurdles, a concurrent appellate action, this appellate action, and myriad other challenges, Plaintiffs-Appellees requested an award of one-third of the Total Settlement Fund.

### A.     The Proposed Attorney's Fees and Costs are Reasonable.

Fed. R. Civ. P. 23(h) allows for "reasonable attorney's fees and nontaxable costs that are authorized by law or parties' agreement." Fed. R. Civ. P. 23(h). A

38

common fund is appropriate when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) ("[T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Courts in the Sixth Circuit require only that "awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."). *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). To determine whether a requested fee is reasonable, courts often analyze a host of factors to decide whether a particular percentage of the fund is a reasonable award of attorney's fees.

Courts in the Sixth Circuit weigh six factors when determining whether a percentage fee is reasonable: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 537 (E.D. Mich. 2003). These six factors are commonly referred to as the *Ramey* factors. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Here, the District

39

Court rightfully awarded Class Counsel "fees and costs equal to the value of one-third of the Total Settlement Fund, after the deduction of the cost of claims administration."  Final Order and Judgment, RE 138, Page ID # 2431.

"The most important *Ramey* factor is the first—the value of the benefit to the class." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 795 (N.D. Ohio 2010). Here, the value of the benefit rendered to the settlement class is substantial because members of the putative class who opted into the Agreement will receive up to five weeks' pay (the duration of their suspension).  Settlement Agreement and Release, RE 60-1, Page ID # 503.  And the benefit rendered to those putative class members is even more substantial because had it not been for this settlement agreement, class members who did not submit an EEOC Charge of Discrimination may have been left without recourse.  Declaration of Noah S. Hurwitz, RE 117-1; Declarations of 100 Putative Class Members, RE 117-2.  Furthermore, the attorney fees and expenses claimed by Plaintiffs' counsel will come directly out of the settlement fund and therefore will result in no out-of-pocket cost to members of the class.  And finally, the limited number of objections to the Agreement, which are vastly outnumbered by the declarations of those in support of the Agreement [Declarations of 100 Putative Class Members, RE 117-2], further demonstrate the settlement's value. *See Lonardo*, 706 F. Supp. 2d at 795 ("the paucity of objections suggest that the Settlement Class Members believe the Settlement Agreement is beneficial.").

40

The second *Ramsey* is the value of services on an hourly basis.  There is no question that Hurwitz Law PLLC and Jimmy Thomas Law have spent thousands of hours on the logistical and legal aspects of this litigation.  In November 2021, Jimmy Thomas Law was inundated with desperate communications from putative class members fearing that they would be terminated due to Defendants-Appellees denying them a religious accommodation to be exempt from the COVID-19 vaccine.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID ## 1516-1517.  It was back in January 2021 that Hurwitz Law PLLC and Jimmy Thomas Law began the process of assisting hundreds of putative class members to file charges of discrimination with the Equal Employment Opportunity Commission.  *Id*.

Hurwitz Law PLLC and Jimmy Thomas Law eventually would represent over 200 clients, with over 90 clients receiving a right to sue letter from the Equal Employment Opportunity Commission and becoming named plaintiffs in the Third Amended Complaint [RE 65] that contains 315 paragraphs.  *Id*.  Hurwitz Law PLLC hired five law clerks and four additional attorneys to meet the demands of this class action lawsuit and conferred weekly with Jimmy Thomas Law on the litigation.  *Id*. Prior to settlement, Hurwitz Law PLLC communicated with Plaintiffs-Appellees for over 12 months, researched religious accommodation law, tracked religious accommodation litigation throughout the country, presented on religious

accommodation law to large groups of interested persons, propounded discovery requests, and responded to Defendants-Appellees' dispositive motions. *Id*.

Then during the Notice Period, Hurwitz Law PLLC fielded questions from an estimated 1000 putative class members, responded to copious motions and legal challenges from foreign counsel attempting to derail the class action settlement, and communicated extensively with the Settlement Administrator to ensure that all putative class members had been notified of the settlement and received a fair opportunity to be included or excluded from the settlement. *Id*. Hurwitz Law PLLC also advocated for putative class members by requesting that notification be sent to hundreds of putative class members who were confused that the notice they received was a "scam" or duplicative of a wage and hour class action settlement that many putative class members had received earlier in the year. With thousands of hours being expended by Plaintiffs-Appellees' counsel to shepherd the named Plaintiffs-Appellees through the administrative hurdles of filing EEOC charges and initiating the lawsuit, conducting discovery, engaging in settlement negotiation, navigating the notice period, appellate practice, and an attempted intervention by third parties, Hurwitz Law PLLC and Jimmy Thomas Law have provided an excellent value to all Class Members for the services rendered.

The third *Ramey* factor is whether Plaintiffs-Appellees' services were undertaken on a contingency basis. "This factor accounts for the substantial risk an

attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed." *Lonardo*, 706 S. Supp. 2d at 796. Here, Plaintiffs-Appellees' counsel took the case on a contingent basis, thereby taking on significant risk. Moreover, as described by the Declaration of Noah S. Hurwitz [RE 117-1], Hurwitz Law filed EEOC charges, communicated with Plaintiffs-Appellees for over twelve months, researched religious accommodation law, tracked religious accommodation cases throughout the country, and responded to several motions. Moreover, Hurwitz Law PLLC hired five law clerks and four additional attorneys to meet the demands of this case. Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1517. The risk taken on by Plaintiffs-Appellees' counsel was significant and prosecuting the case has been a massive undertaking for Plaintiffs-Appellees' counsel from immediately after Class Members were suspended up until the present, with the docket entries in this case above 100 and having to battle appellate motions and appellate briefing deadlines concurrently with the trial court proceedings.

The fourth *Ramey* factor is society's stake in rewarding attorneys who produce such benefits. Here, Plaintiffs-Appellees' counsel deserves to be rewarded because they have achieved fantastic results for the putative class. Indeed, without Defendants-Appellees admitting liability, Plaintiffs-Appellees have secured a settlement agreement that allows up to five weeks' pay for the period of class

members' suspensions (*i.e.* full economic damages for most Class Members).  And but for this litigation, the members of the putative class who did not submit EEOC charges of discrimination would likely have no recourse against Defendants-Appellees.  Declaration of Noah S. Hurwitz, RE 117-1; Declarations of 100 Putative Class Members, RE 117-2.  Indeed, Hurwitz Law PLLC and Jimmy Thomas Law identified alleged wrongs being committed by employers all over the Midwest regarding vaccine mandates and have fought tirelessly to reaffirm the rights of employees to exercise religious and medical accommodation in the workplace. Plaintiffs-Appellees' counsel does not believe that these cases are just COVID-19 cases.  Cases like this one present an opportunity to bolster rights afforded to employees under Title VII.  There is thus a benefit to society because this case like other similar cases apprise employees of their statutory rights and draw attention to the employment practices of large companies like Defendants-Appellees in this case.

The fifth and sixth *Ramey* factors "deal with the complexity of the litigation and expertise and performance of counsel." *Lonardo*, 706 F. Supp. 2d at 796. Here, the expertise of Plaintiffs' counsel is well-established.  Declaration of Noah S. Hurwitz, RE 117-1, Page ID # 1516.  Accordingly, the *Ramey* factors all support awarding Plaintiffs-Appellees their requested attorney's fees.

**B.**     **The Proposed Attorney's Fees and Costs Compare Favorably with Other Matters in the Sixth Circuit.**

Further, a one-third attorney fee is reasonable for class action lawsuits for

courts in the Sixth Circuit. *See Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (awarding class counsel one-third of $130,000.000 Settlement fund). The *Garner* court provided the following rundown in support of its 33% attorney fee award:

> Plaintiff here employs the percentage of the fund method and Class Counsel requests an award of $43,333.33 in attorneys' fees, which represents 33% of the $130,000.00 Settlement Fund . . . This requested fee is unopposed, is consistent with standard fee awards in class actions generally, and there is authority supporting the proposition that awarding proportional attorney fees of around one third of a settlement fund is not an abuse of discretion. *See, e.g., Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351-52 (6th Cir. 2009) (noting in *dicta* that a 30% attorney fee of $1.335 million out of a total settlement figure of $4.45 million was not facially "unreasonable"); *Hillison v. Kelly Servs., Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *9 (E.D. Mich. Jan. 23, 2017) (Michaelson, J.) (finding plaintiffs' anticipated attorneys' fee request of 33% of the settlement fund, or approximately $2.245 million, "in the ballpark of a reasonable award" for purposes of preliminary approval); *American Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-01162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (determining that a 30% attorney fee of $800,000 out of a total settlement figure of $2,400,000 was reasonable); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MCL No. 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996 (Rosen, J.) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund").

*Garner*, 2020 WL 4726938, at *10. Other courts in the Sixth Circuit agree that a one-third contingency attorney fee from the settlement fund is reasonable. *See Hainey v. Parrot*, 617 F. Supp. 2d 668, 678 (S.D. Ohio 2007):

> Here, class counsel has submitted a brief requesting attorney's fees of one-third of the common fund, equivalent to his contingency fee agreement with the class representatives. In *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001), Judge Spiegel observed that in common fund cases attorney's fees between 10% to 30% of the fund are generally considered reasonable. *Id.* at 1042; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("[A] review of similar cases reveals that a majority of common fund class action fee awards fall between twenty and thirty percent." . . . Thus, in this case, class counsel's request for 33% of the common fund . . is not unreasonable per se.

*See also Swigert v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014):

> An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See e.g.*, *Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritzer*, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime.

Here, the complexity of the class action warrants the one-third attorney fees that Plaintiffs are requesting, and the 33.33% figure is well in line with attorney fees

deemed reasonable by other courts within the Sixth Circuit.

Class Counsel also sought (and the District Court awarded) $54,171.27 in litigation costs based on the September 19, 2023 Information Invoice submitted by the Settlement Administrator.  Information Invoice, RE 117-3.  These costs were necessary to manage the logistics of sending notice to Class Members, creating the notice website, tallying opt-in numbers, and myriad other services described in the attached invoice, so the expenses are reimbursable.  *See Garner*, 2020 WL 4726938, at *11 (awarding costs to Plaintiffs' counsel for claims administrator cost).

## CONCLUSION

It is clear after a review of the facts and the considerations of the District Court that there was no abuse of discretion when it came to (1) issuing a final certification of the class and (2) issuing final approval of the class settlement.  Accordingly, Plaintiffs-Appellees request that this Court affirm the District Court's ruling.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiffs-Appellees*
340 Beakes St., Ste. 125
Dated: February 28, 2024          Ann Arbor, MI 48104

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the forgoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,664 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiffs-Appellees*
340 Beakes St., Ste. 125
Dated: February 28, 2024          Ann Arbor, MI 48104

## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| Record Entry | Description | Page ID # |
|---|---|---|
| RE 1 | Complaint | 1-26 |
| RE 26 | Defendants' Answer to Plaintiffs' First Amended Complaint, Affirmative Defenses, and Reliance Upon Jury Demand. | 133-196 |
| RE 34 | Order Regarding Settlement Conference | 245-247 |
| RE 38 | Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint | 284-295 |
| RE 42 | Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss Second Amended Complaint | 303-310 |
| RE 48 | Plaintiffs' Response to Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss Second Amended Complaint | 399-411 |
| RE 60 | Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement | 450-464 |
| RE 60-1 | Settlement Agreement and Release | 465-558 |
| RE 63 | Order Granting Preliminary Approval to Class Action Settlement | 574-582 |
| RE 65 | Third Amended Complaint and Jury Demand | 584-616 |
| RE 67 | Dr. Paul Halczenko's Motion to Intervene as Plaintiff | 622-628 |
| RE 68 | Emergency Motion to Set Aside or Stay | 630-660 |
| RE 71 | Plaintiffs' Response in Opposition to Dr. Paul Halczenko's Motion to Intervene as Plaintiff | 776-794 |
| RE 71-1 | Courthouse News Search | 795-814 |
| RE 71-2 | Declaration of Noah Hurwitz | 815-819 |
| RE 71-3 | Hurwitz Law Courthouse News Search | 820-873 |
| RE 77 | Memorandum Opinion and Order | 942-955 |
| RE 105 | Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Motion to Strike Previously Corrected False Allegations in the Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Emergency Motion for Stay Pending Appeal | 1231-1249 |
| RE 105-1 | New Facebook Posts | 1250-1255 |

| RE 108 | Joint Objection to Class Action Settlement on behalf of Shannon Cross, Debra Hughes, Laura Moskwa, Stephanie Payton, Chad Rolles, Freddie Shellnut, Brenda Weiss, and Joseph Weiss | 1268-1328 |
|---|---|---|
| RE 109 | Objectors' Motion for District Court to Authorize Discovery from Objecting Class Members and Set September 15, 2023, as the Deadline for Responses to Attached Discovery | 1329-1337 |
| RE 111 | Plaintiffs' Response in Opposition to Objectors' Motion for District Court to Authorize Discovery from Objecting Class Members and Set September 15, 2023, as the Deadline for Responses to Attached Discovery | 1373-1388 |
| RE 114 | Memorandum Opinion and Order | 1412-1414 |
| RE 115 | Defendants' Memorandum in Support of Final Approval of Settlement | 1415-1449 |
| RE 117 | Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses | 1483-1513 |
| RE 117-1 | Declaration of Noah Hurwitz | 1514-1520 |
| RE 117-2 | Declaration of 100 Putative Class Members | 1521-1721 |
| RE 117-3 | Informational Invoice | 1722-1723 |
| RE 117-5 | Declaration of Claims Administrator | 1727-1753 |
| RE 119 | Defendants' Supplemental Memorandum Addressing Objections and Opt-Outs | 1755-1769 |
| RE 121 | Plaintiffs' Response to Joint Objection | 1775-1789 |
| RE 121-1 | Example EEOC Charges | 1790-1810 |
| RE 121-2 | *Halczenko* Complaint | 1811-1889 |
| RE 121-3 | *Halczenko* Second Amended Complaint | 1890-1998 |
| RE 122 | Notice of Class Representative Declarations | 1999-2001 |
| RE 130 | Combined Response to Motion and Memoranda of Proposed Class Counsel and Ascension Urging Approval of Settlement on Behalf of Objectors Shannon Cross, Debra Hughes, Laura Moskwa, Stephanie Payton, Chad Rolles, Freddie Shellnut, Brenda Weiss and Joseph Weiss | 2251-2300 |
| RE 132 | Minutes of October 5, 2023 Fairness Hearing | 2342 |
| RE 134 | Order Following Fairness Hearing | 2345-2346 |

| RE 138 | Final Order and Judgment | 2427-2345 |
|--------|--------------------------|-----------|
| RE 140 | Amended Notice of Appeal | 2349-2441 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I caused to be filed the foregoing *Brief of Plaintiff-Appellees Karen Albright, et al.* electronically with the Clerk of the Court.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.

*/s/  Noah S. Hurwitz*
HURWITZ LAW PLLC
340 BEAKES ST. STE. 125
ANN ARBOR, MI 48104
(844) 487-9484
*COUNSEL FOR PLAINTIFFS-APPELLEES*
