## In the United States Court of Appeals for the Sixth Circuit

KAREN ALBRIGHT, et al.

*Plaintiffs–Appellees*

SHANNON CROSS, et al.

*Objectors-Appellants*

v.

ASCENSION MICHIGAN, et al.

*Defendants–Appellees*

On Appeal from the District Court for the Western District of Michigan
(Case No. 1-22:cv-00638-JMB-SJB)

## BRIEF OF DEFENDANTS-APPELLEES, ASCENSION MICHIGAN, ET AL.

Patricia Anderson Pryor
Blythe C. McGregor
Zachary J. LeCompte
JACKSON LEWIS P.C.
201 E. 5th Street, 26th Floor
Cincinnati, Ohio 45202
Telephone: (513) 898-0050
Fax: (513) 898-0051

Allan S. Rubin
Elyse K. Culberson
JACKSON LEWIS P.C.
2000 Town Center, Suite 1650
Southfield, Michigan 48075
Telephone: (248) 936-1900
Counsel for Defendants-Appellees

# Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, Appellees make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned company? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................................ i

STATEMENT OF JURISDICTION ........................................................ ii

STATEMENT OF THE ISSUE ........................................................... iii

STATEMENT OF THE CASE .............................................................. 1

    A.    This Appeal ................................................................. 1

    B.    The Underlying Litigation .................................................. 3

    C.    Notices Sent to Attorney Generals and Class Members, With Minimal Opposition. ................................................................. 6

    D.    Final Approval .............................................................. 7

SUMMARY OF THE ARGUMENT ........................................................... 8

ARGUMENT ......................................................................... 12

    A.    Standard of Review ........................................................ 12

    B.    Appellants Arguments Concerning Heightened Scrutiny and Preliminary Approval Do Not Establish Abuse of Discretion with Respect to the Final Approval. .......................................... 12

    C.    The District Court Did Not Abuse Its Discretion In Issuing Final Approval of the Settlement. ............................................... 14

        1.    The District Court Did Not Abuse Its Discretion Where Plaintiffs' Likelihood of Success on The Merits Is Low .......... 16

            a.    Similar Cases Are Being Dismissed Across The Country; Plaintiffs' Likelihood Of Success Was Low. ................. 17

            b.    The District Court Had Sufficient Information To Weigh The Value Of The Claims. ................................... 26

2.     The District Court Correctly Found There was No Fraud or Collusion. ...................................................................................29

3.     The Complexity, Expense, and Likely Duration of the Litigation Also Favor Approval. .................................................34

4.     Amount of Discovery Engaged in by the Parties ......................36

5.     The Opinions of Class Counsel and Class Representatives .....37

6.     The Reaction of Absent Class Members ...................................38

7.     The Public Interest .................................................................41

D.     Appellants Arguments Fail to Establish Any Abuse of Discretion. ....42

1.     The District Court did not abuse its discretion by allowing the Parties to file the Third Amended Complaint. ...........................42

2.     Appellants' Objection to the Court's Award of Attorney Fees Is Evidence That They Are Simply Grasping At Straws. .............44

CONCLUSION .......................................................................................45

Certificate of Compliance with Rule 32(a) .............................................46

CERTIFICATE OF SERVICE .................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Ascension Michigan*,
Case No. 23-1595, 2023 U.S. App. LEXIS 22084 (6th Cir. Aug. 22, 2023) ................................................................................................2

*Algarin v. NYC Health + Hospitals Corp.*,
Case No. 1:22-cv-8340, 2023 U.S. Dist. LEXIS 108666 (S.D.N.Y. June 23, 2023) .........................................................................20, 24

*Alvarado v Memphis-Shelby Co Airport Auth*,
Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259, at **15-16 (6th Cir. Aug. 15, 2000).........................................................15, 28

*Ananias v. St. Vincent Med. Grp., Inc.*,
2022 U.S. Dist. LEXIS 227563 (S.D. Ind. 2022). (*See also* Response to Motion to Intervene, RE 76, PageID 924-925)..............................4

*Applegate, et al. v. St. Vincent Health Inc., et al.*,
Case No. 1:22-cv-01097-JPH-MG (S.D. Ind.) ....................................1

*Aukamp-Corcoran v Lancaster Gen. Hosp.*,
No. 19-5734, 2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 17, 2022) ..............................................................................................18

*Bailey v. AK Steel Corp.*,
No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 5751 (S.D. Ohio Jan. 14, 2008) ..............................................................................................27

*Barrington v. United Airlines*,
566 F. Supp. 3d 1102 (D. Colo. 2021).................................................21

*Beickert v. New York City Department of Education*,
22-CV-5265(DLI)(VMS), 2023 U.S. Dist. LEXIS 170719 (E.D.N.Y. Sept. 25, 2023)...................................................................22

*Berardinelli v. General Am. Life Ins. Co.*,
357 F.3d 800 (8th Cir. 2004) ...............................................................33

i

*Bert v. AK Steel Corp.*,
No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio, Oct. 23, 2008) ...................................................................................30, 31

*Biden v. Missouri*,
595 U.S. 87, 142 S. Ct. 647, 211 L. Ed. 2d 433 (2022) ....................................24

*Blackwell v Lehigh Val. Health Network*,
No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa. Jan. 23, 2023) ...................................................................................18

*Bordeaux v. Lions Gate Ent., Inc.*,
2023 U.S. Dist. LEXIS 209626 (C.D. Calif. 2023)...........................................22

*Bradley v. Milliken*,
828 F.2d 1186 (6th Cir. 1987) ..........................................................................27

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir.1974) ..............................................................................41

*Bushra v. Main Line Health, Inc.*,
2023 U.S. Dist. LEXIS 229965 (E.D. Pa. Dec. 28, 2023).................................23

*Cagle v. Weill Cornell Medicine*,
Case No. 22-cv-6951, 2023 U.S. Dist. LEXIS 113687 (S.D.N.Y. June 30, 2023) ......................................................................18, 23

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D.Mich.2003) ...............................................................40, 41

*Conner v. Raver*,
2023 U.S. Dist. LEXIS 149360 (N.D. Ca. Aug. 24, 2023) ...............................23

*Creger v. United Launch All. LLC*,
571 F. Supp. 3d 1256 (N.D. Ala. 2021).............................................................21

*D'Cunha v. Northwell Health Systems*,
Case No. 1:22-cv-0988-MKV, 2023 U.S. Dist. LEXIS 33343 (S.D.N.Y. Feb. 28, 2023)..........................................................................20

*Detwiler v. Mid Columbia Medical Center*,
Case No. 3:22-cv-01306-JR, 2023 U.S. Dist. LEXIS 92510 (D. Or. May 26, 2023) ...............................................................................18

*Diemond v. Mich. Dep't of Corr.*,
No. 1:20-cv-473, 2020 U.S. Dist. LEXIS 112259 (W.D. Mich.
June 26, 2020) ................................................................................25

*Divine Equal. Righteous v. Overbrook School For The Blind*,
Case No. 23-846, 2023 U.S. Dist. LEXIS 128805 (E.D. Pa. July
26, 2023) ........................................................................................18

*Doe v. Déjà Vu Consulting, Inc.*,
925 F.3d 886 (6th Cir. 2019) ..............................................12, 16, 33

*Doe v. Hochul*,
2022 U.S. Dist. LEXIS 26301 (N.D.N.Y. 2022) ...............................4

*Does v. Hochul*,
Case No. 21-cv-5067, 2022 U.S. Dist. LEXIS 180025 (E.D.N.Y.
Sep. 30, 2022) ............................................................................19, 23

*Does v. Northshore University Health System*,
Case No. 1:21-cv-5683 (N.D. Ill. 2022) ..........................................29

*Dover Glen Condo. Ass'n, v. Oakland Cnty.*,
No. 22-11468, 2022 U.S. Dist. LEXIS 215745 (E.D. Mich. Nov.
30, 2022) ...........................................................................15, 29, 36

*Draper v United States Pipe & Foundry Co*,
527 F.2d 515 (6th Cir. 1975) ...........................................................21

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y.2010) ...............................................40

*EEOC v. Geo Grp., Inc.*,
616 F.3d 265 (3d Cir. 2010) .............................................................22

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir.1985) .............................................................41

*Ellison v. Inova Health Care Services*,
Case No. 1:23-cv-00132, 2023 U.S. Dist. LEXIS 124861 (E.D. Va.
July 19, 2023)...................................................................................19

*Finkbeiner v. Geisinger Clinic*,
623 F.Supp. 3d 458 (M.D. Pa. 2022)................................................19

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..............................................40

*Friend v. Astrazeneca Pharmaceuticals LP*,
Civil No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749 (D. Md.
May 11, 2023) ........................................................................18

*Gage v. Mayo Clinic*,
No. CV-22-02091-PHX-SMM, 2023 U.S. Dist. LEXIS 77304 (D.
Ariz. May 3, 2023) ..................................................................18

*Garczynski v. Accident Fund Insurance Co*.,
Case No. 22-cv-12615, 2023 U.S. Dist. LEXIS 84101 (E.D. Mich.
May 12, 2023) ........................................................................25

*Garner Props & Mgmt., LLC v. City of Inkster*,
No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655 (E.D. Mich.
Aug. 14, 2020) .......................................................................14

*Geerlings v Tredyffrin/Easttown Sch. Dist*.,
No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sept.
27, 2021) ..............................................................................19

*Gooch v. Life Investors Ins. Co. of America*,
672 F.3d 402 (6th Cir. 2012) ...............................................7, 31

*Graham v. Peltz*,
44 F.4th 527 (6th Cir. 2022) ..................................................34

*Granada Invest., Inc. v. DWG Corp*.,
962 F.2d 1203 (6th Cir.1992) ................................................30

*Grant v. Bethlehem Steel Corp*.,
823 F.2d 20 (2d Cir.1987) .....................................................41

*Griffin v. Massachusetts Department of Revenue*,
Case No. 22-cv-11991-FDS, 2023 U.S. Dist. LEXIS 125845 (D.
Mass. 2023) ..........................................................................18

*Groff v. DeJoy*,
143 U.S. 2279 (2023) ........................................................22, 23

*Guthrie-Wilson v. Cook County*,
   No. 1:23-cv-362, 2023 U.S. Dist. LEXIS 214675 (N.D. Ill. Dec 4,
   2023) ...........................................................................................................19

*Halczenko, et al. v. Ascension Health Inc., et al.*,
   Case No. 1:21-cv-2816 (S.D. Ind.) ......................................................1, 33, 39

*Hammon v. Barry*,
   752 F. Supp. 1087 (D.D.C.1990) .........................................................................40

*Harris v. Vector Mktg, Corp.*,
   No. C-08-5198, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29,
   2011) ...........................................................................................................43

*Huguley v. Gen. Motors Corp.*,
   No. 89-2172, 1991 U.S. App. LEXIS 2993 (6th Cir. Feb. 22, 1991)
   (per curiam)...................................................................................................41

*Hyland v. Navient Corp.*,
   48 F.4th 110 (2d Cir. 2022) .........................................................................42, 43

*International Union, UAW v. General Motors*,
   497 F.3d 615 (6th Cir. 2007) ...................................................................*passim*

*Izzio v. Century Partners Golf Mgmt., L.P.*,
   2015 U.S. Dist. LEXIS 123182 (N.D. Tex. Sept. 15, 2015) ............................13

*Jackson v. Tyson Foods*,
   CASE NO. 5:23-CV-5102, 2023 U.S. Dist. LEXIS 232260 (W.D.
   Ark. Nov. 27, 2023) .....................................................................................19

*Kalsi v. New York City Transit Authority*,
   62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir.
   1999) ...........................................................................................................21

*Kiel v. Mayo Clinic Health System Southeast Minn.*,
   Case No. 22-1319, 2023 U.S. Dist. LEXIS 135595 (D. Minn. Aug.
   4, 2023) .........................................................................................................18

*Leigh v. Artis-Naples, Inc.*,
   No. 2:22-cv-606, 2022 U.S. Dist. LEXIS 233789 (M.D. Fla. Dec.
   30, 2022) .......................................................................................................21

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015) .........................................................6

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ...........................................................................15

*Lucky v. Cobx. Co.*,
Case No. 22-12514, 2023 U.S. Dist. LEXIS 81969 (E.D. Mich.
May 10, 2023) .....................................................................................................25

*Mace v. Crouse Health Hospital*,
Case No. 5:22-cv-1153, 2023 U.S. Dist. LEXIS 137479 (N.D.N.Y.
Aug. 8, 2023) ......................................................................................................23

*McCabe v. Six Continents Hotels, Inc.*,
No. 12-cv-04818, 2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June
30, 2015) .............................................................................................................44

*McKinley v. Princeton University*,
No. 22-5069, 2023 U.S. Dist. LEXIS 75602 (D.N.J. 2023)...............................18

*Minor v. FedEx Office & Print Servs.*,
No. C091375 TEH, 2013 U.S. Dist. LEXIS 18224 (N.D. Cal. Feb.
8, 2013) ...............................................................................................................32

*Monaco v. Historic Old Bermuda Inn, Inc.*,
No. 18 Civ. 4101, 2020 U.S. Dist. LEXIS 267382 (E.D.N.Y. Apr.
3, 2020) ...............................................................................................................32

*Negrete v. Allianz Life Ins. Co*,
523 F.3d 1091 (9th Cir. 2008) ......................................................................13, 32

*O'Hailpin v. Hawaiian Airlines, Inc.*,
583 F. Supp. 3d 1294 (D. Haw. 2022)................................................................21

*In re Oil Spill by the Oil Rig "Deepwater Horizon.*
910 F. Supp. 2d 891 (E.D. La. 2012)..................................................................41

*Olden v. Gardner*,
294 Fed. Appx. 210 (6th Cir. 2008).............................................................28, 33

*Partl v. Volkswagen, AG*,
895 F.3d 597 (9th Cir. 2017) ..............................................................................32

*Passarella v Aspirus, Inc.*,
    Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 U.S. Dist. LEXIS
    40958 (W.D. Wis. Mar. 9, 2023) ........................................................18

*Pena v. Heath*,
    2019 U.S. Dist. LEXIS 206006 ........................................................13

*Petersen v. Snohomish Regional Fire and Rescue*,
    Case No C22-1674, 2024 U.S. Dist. LEXIS 13749 (W.D. Wash.
    Jan 25, 2024) ........................................................22

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ........................................................16

*Prida v. Option Care Enterprises*,
    Case No. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298 (N.D.
    Ohio Oct. 24, 2023) ........................................................19

*Reed v General Motors Corp.*,
    703 F.2d 170 (5th Cir.1983) ........................................................41

*In re Regions Morgan Keegan Secs.*,
    2014 U.S. Dist. LEXIS 204978 (W.D. Tenn. Dec. 24, 2014) ............37

*Reichert v. Infusion Partners LLC*,
    22-cv-05450, 2023 U.S. Dist. LEXIS 125765 (E.D. La. July 20,
    2023) ........................................................18

*Rogers v. Neb. Urban Indiana Health Coal., Inc.*,
    No. 8:22-CV-410, 2023 U.S. Dist. LEXIS 67266 (D. Neb. Apr. 18,
    2023) ........................................................17

*Scheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 ........................36

*In re Sinus Buster Prods. Consumer Litig.*,
    No. 12–CV–2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415
    (E.D.N.Y. Nov. 10, 2014) ........................................................40

*Sturgill v. American Red Cross*,
    Case No. 22-cv-11837, 2023 U.S. Dist. LEXIS 224036 (E.D.
    Mich. Dec. 15, 2023) ........................................................19

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ...........................................29, 34

*Thomsen v. Morley Co., Inc.*,
639 F. Supp. 3d 758 (E.D. Mich., Nov. 4, 2022) ...............................30

*Thornton v. Ipsen Biopharmaceuticals*,
Case No. 23-11171-JCB, 2023 U.S. Dist. LEXIS 193116 (D. Mass.
Oct. 26, 2023) ......................................................................................19

*Together Emples. v. Mass Gen. Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021).................................................20

*Trinh v. Shriners Hosps. for Child.*,
2023 U.S. Dist. LEXIS 203734 (D. Or. 2023) ...................................19

*Ulrich v. Lancaster Gen. Health*,
No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa. Apr. 13,
2023) ....................................................................................................19

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..............................................................10

*Villareal v. Rocky Knoll Health Care Center*,
No. 21-CV-729, 2022 U.S. Dist. LEXIS 210267 (E.D. Wisc. Nov.
21, 2022) ..............................................................................................20

*Winans v Cox Auto, Inc.*,
No. 22-3826, 2023 U.S. Dist. LEXIS 66444 (E.D. Pa. Apr. 17,
2023) ....................................................................................................18

*Wolff v. Cash 4 Titles*,
No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla.
Sept. 26, 2012) .....................................................................................31

*Zehentbauer Family Land v. Chesapeake Expl.*,
935 F.3d 496 (6th Cir. 2019) ..............................................................12

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*,
16 F. App'x 433 (6th Cir. 2001) .........................................................13

**Statutes**

28 U.S.C. § 1291 ................................................................... ii

28 U.S.C. § 1331 ................................................................... ii

42 U.S.C. § 2000e ................................................................. ii

**Other Authorities**

86 Fed. Reg. 61568 (2021) ...................................................3

6th Cir. R. 32(b)(1) ............................................................46

Fed. R. App. P. 32 .............................................................46

Fed. R. App. P. 34 ..............................................................i

Federal Rule of Civil Procedure 23 ............................................*passim*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Although Defendants-Appellees believe that oral argument is unnecessary because the appeal is frivolous and the issues have been authoritatively decided, to the extent a panel of three judges pursuant to Fed. R. App. P. 34(a)(2) does not agree, Defendants-Appellees respectfully request oral argument to aid in the decisional process.

## STATEMENT OF JURISDICTION

The U.S. District Court for the Western District of Michigan ("District Court") had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. The claims at issue arise under federal law, 42 U.S.C. § 2000e.

The U.S. Court of Appeals for the Sixth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it arises from a final decision, the U.S. District Court for the Western District of Michigan's Final Order and Judgment (RE 138, PageID 2427-2435), issued within the Sixth Circuit.

## STATEMENT OF THE ISSUE

1. Did the District Court act within its discretion when it approved the class action settlement that was overwhelmingly approved by class members, the class representatives and counsel, where more than 150 similar cases have been dismissed in just the last two years, where Appellants present nothing other than speculative conclusory claims of fraud or collusion and where the District Court reviewed hundreds of pages of briefing and exhibits, held a hearing where all parties and the objectors could participate, and concluded that the settlement was fair reasonable and adequate; that the settlement was negotiated at arms-length as a result of good faith negotiations by counsel who fairly and adequately represented the interest of the class; that the settlement was not the product of fraud or collusion; and that all requirements for approval of the settlement under Federal Rule of Civil Procedure 23, including the requirements in *International Union, UAW v. General Motors*, 497 F.3d 615, 631 (6th Cir. 2007) had been met?

# STATEMENT OF THE CASE

## A.    This Appeal

This is an appeal by eight individual objectors to a settlement of a hotly contested COVID-19 vaccine class action that they had the opportunity to opt out of. The Parties, after the help of the magistrate judge in a court-ordered mediation, ultimately reached a settlement.  After proper notice to the class members and CAFA notices to the applicable attorney generals, only nine (0.19%) of the 4,642 potential class members filed objections to the settlement and only 281 (6%) opted out.[1]  (RE 115, PageID 1447)  2,703 (58%) of the class members filed a claim.  (*Id.*)  Despite the wide support for the settlement, Appellants' attorney[2] attempted to thwart the settlement (1) first by filing a Motion to Intervene (RE 67) and Emergency Motion to Set Aside Order Granting Joint Motion for Preliminary Approval of Class Action

---

[1]  Of those who requested exclusion, 121 (43%) have their own cases already pending against one or more of the Defendants.  (RE 115, PageID 1429)  87 of those individuals are represented by the Appellants' attorney William Bock and the law firm Kroger Gardis & Regas, LLP ("KGR"). (*Id.*)

[2]  The Appellants' attorney, William Bock, filed two separate lawsuits against some of the Defendants in this lawsuit. *Halczenko, et al. v. Ascension Health Inc., et al.*, Case No. 1:21-cv-2816 (S.D. Ind.) and *Applegate, et al. v. St. Vincent Health Inc., et al.*, Case No. 1:22-cv-01097-JPH-MG (S.D. Ind.).  In February 2023, Bock moved to consolidate his two cases, both of which purported to be class actions, but did not move to consolidate this case with them, despite knowledge of its existence.  Bock has not moved for class certification in his cases, and there is a pending motion to dismiss in response to his Consolidated Complaint (the eighth complaint in total between the two cases).  *Halczenko, et al. v. Ascension Health Inc., et al.*, Case No. 1:21-cv-2816 (S.D. Ind.)

Settlement and Transfer Venue (RE 68) on behalf of one of his plaintiffs Paul Halczenko, which the District Court properly considered and denied. (RE 77) (This was appealed (RE 78) and is currently pending before this Court in Case No. 23-1595); (2) then by filing a Motion to Stay Pending Appeal and Postpone August 23, 2023 Opt-In/Opt-Out and Objection Deadline and October 5, 2023 Fairness Hearing, which the District Court (RE 93), and subsequently this Court, denied. *Albright v. Ascension Michigan*, Case No. 23-1595, 2023 U.S. App. LEXIS 22084 (6th Cir. Aug. 22, 2023); and (3) finally, by filing Objections on behalf of the eight individuals, Shannon Cross, Deborah Hughes, Laura Moskwa, Stephanie Payton, Charles Rolles, Freddie Shellnut, Brenda Weiss, and Joseph Weiss (collectively "Objectors" or "Appellants" or "Appellant-Objectors"), who now file this appeal. (RE 108)

The District Court, after the benefit of a hearing and voluminous briefing by Appellants' attorney,[3] found the settlement was fair, reasonable and adequate. The Appellants have not identified any abuse of discretion by the District Judge and the judgement and approval of the settlement should be affirmed.

---

[3] Between the filings on behalf of Paul Halczenko and the filings on behalf of the eight Objectors, Appellants' attorney filed roughly 247 pages of briefing with 287 pages of exhibits. (RE 67, 68, 93, 95, 100, 108, 109, 124, 130)

**B.** **The Underlying Litigation**

No one needs a recap of the COVID-19 pandemic; it was bad. It was particularly dangerous for vulnerable populations (the very individuals healthcare employers and hospitals, like Defendants, cared for).

Like many healthcare employers, Ascension Health Alliance and many of its affiliated entities (the Defendants-Appellees here, collectively "Ascension") adopted a COVID-19 Vaccine Policy ("CVP") to protect its patients and workforce from COVID-19. Its policy was similar to the requirements announced by President Biden on September 9, 2021 https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ and the Interim Final Rule issued on November 5, 2021, by the Centers for Medicare & Medicaid Services ("CMS"), 86 Fed. Reg. 61568 (2021).

Under the CVP, employees had to be fully vaccinated against COVID-19 by November 12, 2021. Employees with medical contraindications or religious beliefs could seek an exemption from the CVP. Employees who remained unvaccinated and who had not received an exemption were placed on unpaid leave or suspension on November 12, 2021. (Pratt Decl., RE 115-2, PageID 1452, ¶ 3) Due to a variety of changing circumstances, Ascension recalled the vast majority of employees who had requested medical or religious exemptions anywhere from 1 day to roughly 6 weeks from the start of any suspension. (Complaint, RE 1, PageID 3: alleging from

the start that Defendants recalled employees in December 2021)  A number of individuals obtained other employment prior to being recalled.  (Pratt Decl., RE 115-2, PageID 1453, ¶ 6)

The Plaintiffs in this case claimed they submitted, and were denied, religious exemption requests to the vaccine requirement.  They filed this lawsuit seeking to represent a class of employees who were denied a religious exemption from the COVID-19 vaccine and were either suspended without pay or felt forced to resign.  (Complaint, RE 1, PageID 16, ¶ 188)  On November 17, 2022, Defendants moved to dismiss Plaintiffs' Second Amended Complaint.  (RE 38)  Ascension has successfully dismissed other cases filed against them on similar grounds.  *See e.g. Doe v. Hochul*, 2022 U.S. Dist. LEXIS 26301 (N.D.N.Y. 2022); *Ananias v. St. Vincent Med. Grp., Inc*., 2022 U.S. Dist. LEXIS 227563 (S.D. Ind. 2022).  (*See also* Response to Motion to Intervene, RE 76, PageID 924-925)

On January 13, 2023, the parties attended a court-ordered settlement conference with Magistrate Judge Berens.  (Case Management Order, RE 30, PageID 209, ¶ 6)  While the conference did not resolve the matter, the parties ultimately reached a settlement along terms substantially similar to the original demand of Plaintiffs, but on a nationwide basis.  Although Plaintiffs originally only sued the Michigan entities of Ascension Health Alliance, the policy challenged extended throughout the Ascension Health Alliance system.  Ascension Health

Alliance and its many subsidiaries still employ many of the class members. Ascension Health Alliance recognized that only providing an offer of settlement to individuals in one state would create the potential for more disruption and disgruntlement among its employees. On April 24, 2023, the parties filed a Joint Motion for Preliminary Approval of the settlement. (RE 60) The settlement included an agreement to a Third Amended Complaint ("TAC") for purposes of the settlement. The TAC is substantially the same as the Plaintiffs' Second Amended Complaint, but it extended the claims to all Ascension Health Alliance entities nationwide who adopted the CVP or a substantially similar vaccination policy. (RE 65)

On April 26, 2023, the District Court preliminarily approved the agreement, approved the dissemination of the class notice which provided procedures for Class Members to object or opt out from the settlement, and set a fairness hearing for October 5, 2023. (Order Granting Joint Motion for Preliminary Approval, RE 63; Notice of Fairness Hearing, RE 64) The court found that the settlement: (a) was the result of the parties' good-faith negotiations; (b) was entered into by experienced counsel after extensive arm's length negotiations; (c) gave the parties the opportunity to adequately assess the case's strengths and weaknesses; and (d) reasonably accounts for the parties' strengths and weaknesses. (Order Granting Motion for Preliminary Approval, RE 63, PageID 575)

In accordance with the settlement and District Court's Order, Class members who opted out of the settlement, are not bound by the settlement and can pursue their own claims. (Settlement Agreement, RE 60-1, PageID 520)

The District Court set a final approval hearing for October 5, 2023. (Notice of Fairness Hearing, RE 64)

### C.    **Notices Sent to Attorney Generals and Class Members, With Minimal Opposition.**

On May 4, 2023, in accordance with the Class Action Fairness Act ("CAFA"), a Notice of Class Action Settlement along with the required exhibits was served on the Attorney General of the United States and the Attorney Generals and State Regulatory Agencies for the States of Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Michigan, Mississippi, Missouri, New York, North Carolina, New Mexico, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Wisconsin, Wyoming, and the District of Columbia. (Defs. Certificate of Service of CAFA Notice, RE 66). No federal or state official has objected to the settlement.[4]

Rust Consulting, Inc. (www.rustconsulting.com) ("Rust") was retained as the Claims Administrator. On June 9, 2023, in accordance with the terms of the

---

[4] *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588-589 (N.D. Cal. Sept. 15, 2015) (When federal or state officials do not raise concerns about a class settlement, this factor favors settlement).

Settlement Agreement and the Court's Preliminary Approval Order, Rust mailed class notices (along with claim forms and exclusion forms) to 4,642 potential class members. Rust also emailed class notices (along with claim forms and exclusion forms) and created a website, www.religiousclaim.com, where class members could view the: (a) class notice, (b) settlement agreement, with exhibits, (c) Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement; (d) Preliminary Approval Order, (e) Claim Form, and (f) Exclusion form. (See, Decl. of Claims Administrator, RE 115-3, PageID 1457-58, ¶12-18) Class members could complete the claim and exclusion forms online, or mail or email the forms to the Claims Administrator. (*Id., see also* Settlement Agreement, Art. IV, ¶¶(b)(c)(d), RE 60-1, PageID 480-481) The process satisfied both due process and Rule 23.[5]

**D.** **Final Approval**

Following the notice period, the Parties submitted briefing in favor of final approval. (RE 115, 117, 119, 121) The Court also received over 80 pages of

---

[5] The Objectors do not claim any issue with the CAFA or class notices. "The contents of a ... notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, ... that any class member may appear and be heard at the hearing….and "information [about] the class members' right to exclude themselves and the results of failure to do so." *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 422-23 (6th Cir. 2012) (all that the notice must do is "'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests."), citing Newberg on Class Actions, § 8:32-8:33.

briefing and over 170 pages of exhibits from the eight Objectors to the settlement, represented by Bock.  (RE 108, 109, 124, 130)  On October 5, 2023, in accordance with the Class Notice provided to class members, the District held a fairness hearing at which it heard from the parties as well as from Bock on behalf of the Objectors. (Fairness Hearing Transcript, RE 135)  Following consideration of the voluminous written record before it and the content of the fairness hearing, the District Court approved the settlement, issuing its final order and judgment on November 2, 2023. (RE 134, 135, 138)  The District Court found that all requirements of Rule 23 as well as the factors established by this Court for consideration had been satisfied. (*Id.*)

The Objectors filed two notices of appeal, which have been consolidated together.  (RE 137, 140)

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its wide direction in approving the class action settlement in this case in accordance with the Federal Rules of Civil Procedure, Sixth Circuit precedent and the federal policy favoring settlement of class actions.  *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

The Settlement Agreement is fair, reasonable, and adequate.  Plaintiffs' claims, stemming from the global pandemic, have significant risk of being dismissed, and face lengthy and expensive litigation, and/or years of appeals.

Indeed, prior to the settlement, Ascension had moved to dismiss this case.  (RE 38)  Ascension has obtained dismissals in other cases in which similar claims were made.  Across the country more than 150 cases alleging claims like those made in this case have been dismissed, in whole or in part, on the pleadings and others that have reached summary judgment have been dismissed at summary judgment.

Settlement discussions in this case occurred only because the Court ordered the parties to participate in a settlement conference with Magistrate Judge Berens.  (Case Management Order, RE 30, PageID 209)  The timing of the settlement discussions, early in the discovery process, were the result of Court order not any "collusion" by the parties or counsel.  The parties continued discussions for several months before Defendants agreed to a settlement proposal substantially similar to Plaintiffs' original demand.  Plaintiffs did not bargain away rights or otherwise act as a party with no bargaining power.  This Court preliminarily approved the Settlement on April 26, 2023, finding that it was "fair, reasonable, adequate."[6]  (RE

---

[6] Appellants spend a large part of their brief challenging the preliminary approval based on conclusory and baseless misperceptions of what occurred.  They identify no evidence that the Court was not aware of the existence of other cases, indeed the preliminary approval order recognizes the existence of other cases by enjoining them until individuals opt out of the class in this case.  (Order Granting Preliminary Approval, RE 63, PageID 582, ¶ 24)  Moreover, any information that Appellants claim was withheld from the District Court, Appellants' attorney had brought to the District Court's attention in June prior to the Class Notices being sent.  The District Court undoubtedly had all of the information before it when it considered and rejected those arguments in June finding them conclusory and baseless and when it rejected them again at the Fairness Hearing.

63, PageID 575)  Notice was properly provided to the potential class members and 2,703 class members submitted claims confirming that the individuals the agreement was designed to assist also found it fair, reasonable and adequate.

The law favors the settlement of class action lawsuits. *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (Settlement of class actions favored when substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation).  Given the uncertainties of the litigation, the complexity of issues, the value of the settlement to class members (which for many represents full backpay before fees and costs), the strong support of the class, and the absence of meaningful objections to the settlement, the District Court did not abuse its discretion in approving the settlement. The settlement is "fair, reasonable, and adequate" and comports with the requirements of Rule 23 and this Court's factors for consideration.

Although Appellants' attorney does not want the settlement (that is overwhelmingly supported by the Class Members) to succeed, despite multiple renditions of the same arguments (RE 67, 68, 93, 95, 100, 108, 109, 124, 130), he has not identified any clear error of judgment, any misapplication of the legal standard or any clearly erroneous finding of fact.  The District Court reviewed and considered multiple motions and briefs from Appellants' attorney on these issues.

The District Court provided a thorough discussion of the consideration and reasoning for its decision.  There is no abuse of discretion and the District Court's decision must be affirmed.

# ARGUMENT

## A.     Standard of Review

This Court reviews a district court's approval of a class action settlement for abuse of discretion.  *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013)); *See also Zehentbauer Family Land v. Chesapeake Expl.*, 935 F.3d 496, 502-03 (6th Cir. 2019) ("We will reverse the class certification decision…only if [the objectors] make [] a strong showing that the district court's decision amounted to a clear abuse of discretion.")

To find an abuse of discretion, the district court must have "relie[d] on clearly erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment." *Zehentbauer*, 935 F.3d at 502.

## B.     Appellants Arguments Concerning Heightened Scrutiny and Preliminary Approval Do Not Establish Abuse of Discretion with Respect to the Final Approval.

Appellants spend a large part of their brief arguing that the District Court should provide heightened scrutiny because the settlement occurred before extensive discovery and before class certification, and expanded the class beyond Michigan. Even if heightened scrutiny by the District Court was required, Appellants point to nothing that would suggest the District Court did not properly scrutinize the settlement.  Indeed, Appellants' attorney filed roughly 247 pages of briefing with

287 pages of exhibits, (RE 67, 68, 93, 95, 100, 108, 109, 124, 130) all of which the District Court reviewed, considered and ruled upon.[7] (RE 77, 106, 114, 134, 135, 138) As discussed below, the District Court properly scrutinized each of the factors required by this Court and found that all of them supported approval of the settlement.

Similarly, Appellants' arguments challenging the preliminary approval are without merit. These arguments are similar to those made by their attorney when he

---

[7] Appellants do not cite any authority that would require the parties in this type of case to include counsel in another case in the settlement discussions. (Appellants' attorney has never been class counsel in this case, nor has he certified a class in any other case against Ascension; there were no unauthorized settlement discussions). Nor do they cite any case finding an abuse of discretion when a court did not apply the discretionary first to file rule for a plaintiff who was still amending his complaint in one case to block a settlement in another case. It is not unusual for there to be multiple class actions filed on a single issue (notably, Appellant's attorney filed two himself), and it is not unusual for there to be a settlement in one and an attempt by counsel in another to disrupt it in a fight over fees. *See, e.g.*, *Negrete v. Allianz Life Ins. Co*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008). Courts uphold settlements in these situations even when the settling plaintiffs were not the first to file. *See Izzio v. Century Partners Golf Mgmt., L.P.*, 2015 U.S. Dist. LEXIS 123182, at *22-23 (N.D. Tex. Sept. 15, 2015) ("attempting to use the rules to secure his or his counsel's place as the winner in a certification race in competing class actions … is not an interest the law or the Court is required to protect."); *Pena v. Heath*, 2019 U.S. Dist. LEXIS 206006, at *8, (court declined to apply the first-to-file rule when the parties had negotiated a class action settlement and the first filed case was still in the discovery stage). *See also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x 433, 437 (6th Cir. 2001) ("District courts have the discretion to dispense with the first-to-file rule where equity so demands."). Moreover, Appellants' attorneys were not the first to file a lawsuit against Ascension on this issue. (*See* Response to Motion to Intervene, RE 76, PageID 924-925)

represented proposed intervenor Paul Halczenko. They are based on speculative and baseless misperceptions of what occurred. Appellants identify no evidence that the Court was not aware of the existence of other cases, indeed the preliminary approval order recognizes the existence of other cases by enjoining them until individuals opt out of the class in this case. (RE 63, PageID 582, ¶ 24)

Nor is there any evidence that the parties breached any duty owed to the District Court or to any class members and the District Court did not find any such breach. Indeed, any information that Appellants claim was withheld from the District Court before the preliminary approval, Appellants' attorney had brought to the District Court's attention in June prior to the Class Notices being sent. (Motion to Intervene, RE 67; Emergency Motion to Set Aside Order RE 68) The District Court considered and rejected those arguments at that time finding them speculative and baseless and rejected them again at the Fairness Hearing. (Order Denying Intervention, RE 77, PageID 952-953; RE 135)

## C. __The District Court Did Not Abuse Its Discretion In Issuing Final Approval of the Settlement.__

The evaluation and approval of a class settlement is committed to the sound discretion of the district court. *Garner Props & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655, *10 (E.D. Mich. Aug. 14, 2020). The District Court must determine if the settlement falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.

*Dover Glen Condo. Ass'n, v. Oakland Cnty.*, No. 22-11468, 2022 U.S. Dist. LEXIS 215745 at *6 (E.D. Mich. Nov. 30, 2022) (citations omitted). Because the Court must consider risk factors and the uncertainty of the outcome of the litigation as well as the potential recovery, a proposed class settlement may be fair, just, and reasonable even though it amounts to only a fraction of the potential recovery in a fully litigated case. *Alvarado v Memphis-Shelby Co Airport Auth,* Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259, at **15-16 (6th Cir. Aug. 15, 2000) (A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case) (citations omitted); *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (risk of going to trial would have been significant).

The court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

In concluding that the settlement was fair, reasonable and adequate, the District Court considered each of the factors set forth by this Court to guide the court's inquiry: (1) the likelihood of success on the merits; (2) the risk of fraud or collusion; (3) the complexity, expense and likely duration of the litigation; (4) the amount of discovery engaged in by the parties; (5) the opinions of class counsel and

class representatives; (6) the reaction of absent class members; and (7) the public interest. *Doe v. Déjà Vu,* 925 F.3d at 894-96 (6th Cir. 2019), citing *UAW,* 497 F.3d at 631 (citation omitted).

The District Court properly found that each of these factors supported approval of the settlement.

### 1. The District Court Did Not Abuse Its Discretion Where Plaintiffs' Likelihood of Success on The Merits Is Low.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). "The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Id., citing In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citations omitted). All class action settlements involve a balancing of competing interests. Weighing the likelihood of success with the benefits offered allows the Court to "analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive." *Doe v. Déjà Vu*, 925 F.3d at 895. The District Court did not abuse its discretion in finding that the settlement's offer of immediate relief, when weighed against the burdens and risks of continued litigation, weighed in favor of approval.

The Court's role is not to "decide the merits of the case or resolve unsettled legal questions," but rather to weigh "the plaintiff's likelihood of success on the

merits against the amount and form of the relief offered in settlement." *UAW*, 497

F.3d at 631. Based on the uncertainty of Plaintiffs' claims, and the complexity and

magnitude of the litigation, the District Court properly found the settlement

agreement fair, reasonable and adequate. The District Court noted:

> "Absent settlement approval defendants will certainly seek a ruling
> on their motion to dismiss. The plaintiffs will face the defense of
> undue hardship, preventing an accommodation which could be
> particularly challenging for plaintiffs to overcome in the healthcare
> services setting, as well as other legal challenges and objections to
> plaintiffs' discovery requests and the viability of some class member
> claims. As plaintiffs put it, class members are receiving economic
> damages but foregoing the battle for other compensatory damages.
> Moreover, absent settlement, class members would have to establish
> that they have a sincerely held religious belief that conflicted with
> the vaccine requirement.
>
> The Court agrees that the settlement in this matter avoids the burden
> and risks associated with further litigation and guarantees immediate
> relief for the class."

(Fairness Hearing Transcript, RE 135, PageID 2405-2406)

### a.      Similar Cases Are Being Dismissed Across The Country; Plaintiffs' Likelihood Of Success Was Low.

As the District Court recognized, if this case proceeded to dispositive motion

or to trial, there is a strong likelihood that Ascension would have prevailed. Each

Plaintiff and class member would have to establish that they have a sincerely held

religious belief that conflicted with the vaccine requirement. Many courts have

dismissed similar claims on this basis alone. *See Rogers v. Neb. Urban Indiana

Health Coal., Inc*., No. 8:22-CV-410, 2023 U.S. Dist. LEXIS 67266 (D. Neb. Apr.

18, 2023) (dismissing claims for failure to establish religious belief); *McKinley v. Princeton University*, No. 22-5069, 2023 U.S. Dist. LEXIS 75602 (D.N.J. 2023) (same); *Gage v. Mayo Clinic*, No. CV-22-02091-PHX-SMM, 2023 U.S. Dist. LEXIS 77304 (D. Ariz. May 3, 2023) (same); *Friend v. Astrazeneca Pharmaceuticals LP*, Civil No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749 (D. Md. May 11, 2023)(same); *Griffin v. Massachusetts Department of Revenue*, Case No. 22-cv-11991-FDS, 2023 U.S. Dist. LEXIS 125845 (D. Mass. 2023)(same); *Cagle v. Weill Cornell Medicine,* Case No. 22-cv-6951, 2023 U.S. Dist. LEXIS 113687 (S.D.N.Y. June 30, 2023)(same); *Divine Equal. Righteous v. Overbrook School For The Blind*, Case No. 23-846, 2023 U.S. Dist. LEXIS 128805 (E.D. Pa. July 26, 2023)(same); *Reichert v. Infusion Partners LLC,* 22-cv-05450, 2023 U.S. Dist. LEXIS 125765 (E.D. La. July 20, 2023)(same); *Aukamp-Corcoran v Lancaster Gen. Hosp.*, No. 19-5734, 2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 17, 2022) (same); *Winans v Cox Auto, Inc.*, No. 22-3826, 2023 U.S. Dist. LEXIS 66444 (E.D. Pa. Apr. 17, 2023)(same) *Blackwell v Lehigh Val. Health Network*, No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa. Jan. 23, 2023)(same); *Passarella v Aspirus, Inc.,* Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 U.S. Dist. LEXIS 40958 (W.D. Wis. Mar. 9, 2023)(same); *Detwiler v. Mid Columbia Medical Center*, Case No. 3:22-cv-01306-JR, 2023 U.S. Dist. LEXIS 92510 (D. Or. May 26, 2023)(same); *Kiel v. Mayo Clinic Health System Southeast Minn.*, Case No. 22-1319 (JRT/ECW),

2023 U.S. Dist. LEXIS 135595 (D. Minn. Aug. 4, 2023)(same); *Geerlings v Tredyffrin/Easttown Sch. Dist*., No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sept. 27, 2021)(same); *Ellison v. Inova Health Care Services*, Case No. 1:23-cv-00132, 2023 U.S. Dist. LEXIS 124861 (E.D. Va. July 19, 2023)(same); *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa. Apr. 13, 2023) (same); *Finkbeiner v. Geisinger Clinic*, 623 F.Supp. 3d 458 (M.D. Pa. 2022) (same). *See also Sturgill v. American Red Cross*, Case No. 22-cv-11837, 2023 U.S. Dist. LEXIS 224036 (E.D. Mich. Dec. 15, 2023)(same); *Prida v. Option Care Enterprises*, CASE NO. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298 (N.D. Ohio Oct. 24, 2023) (same); *Thornton v. Ipsen Biopharmaceuticals*, Case No. 23-11171-JCB, 2023 U.S. Dist. LEXIS 193116 (D. Mass. Oct. 26, 2023)(same); *Trinh v. Shriners Hosps. for Child*., 2023 U.S. Dist. LEXIS 203734, *27-28 (D. Or. 2023)(same); *Guthrie-Wilson v. Cook County*, No. 1:23-cv-362, 2023 U.S. Dist. LEXIS 214675 (N.D. Ill. Dec 4, 2023)(same); *Jackson v. Tyson Foods*, CASE NO. 5:23-CV-5102, 2023 U.S. Dist. LEXIS 232260 (W.D. Ark. Nov. 27, 2023) (same).

In addition, many courts have determined that religious accommodations to a COVID-19 vaccine policy in the midst of the global pandemic posed an undue hardship as a matter of law. *See Does v. Hochul*, Case No. 21-cv-5067, 2022 U.S. Dist. LEXIS 180025, at *45 (E.D.N.Y. Sep. 30, 2022) (granting motion to dismiss finding that "exempting the plaintiffs from the vaccine requirement would expose

vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship."); *D'Cunha v. Northwell Health Systems*, Case No. 1:22-cv-0988-MKV, 2023 U.S. Dist. LEXIS 33343 (S.D.N.Y. Feb. 28, 2023) (granting motion to dismiss where reporting unvaccinated to a worksite providing direct patient care posed an unacceptable health and safety threat to patients); *Villareal v. Rocky Knoll Health Care Center*, No. 21-CV-729, 2022 U.S. Dist. LEXIS 210267, *16 (E.D. Wisc. Nov. 21, 2022) (employer acted reasonably where it acted in accordance with federal COVID-19 guidance; "[A]n accommodation can be an undue hardship if it causes or increases safety risks or the risk of legal liability for the employer. 'The inquiry ultimately boils down to whether the employer acted reasonably [in determining that a potential accommodation would cause it undue hardship].'"); *Algarin v. NYC Health + Hospitals Corp.*, Case No. 1:22-cv-8340, 2023 U.S. Dist. LEXIS 108666, *23 (S.D.N.Y. June 23, 2023)("Furthermore, tracking compliance with testing, permitting Plaintiff to potentially expose other workers at H+H to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all significant hardships that create an undue burden on Defendant with the requested accommodation."); *Together Emples. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 433 (D. Mass. 2021) ("Under the circumstances, it was reasonable for MGB to conclude that unvaccinated

employees—who are more likely to become infected—pose a direct threat to patients and others. '[T]his court should not second-guess the hospital's judgment in matters of patient safety.'"); *Barrington v. United Airlines,* 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (recognizing the undue hardship created by the potential risk of the unvaccinated associates exposing co-workers to heightened risk of COVID-19); *Creger v. United Launch All. LLC,* 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying injunctive relief based on the undue hardship posed by the added cost and administrative burden of providing weekly testing, and the risk of employee hospitalizations and deaths); *O'Hailpin v. Hawaiian Airlines, Inc.,* 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (recognizing undue hardship from increased risk of COVID-19 that unvaccinated employees pose to other employees and passengers); *Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606, 2022 U.S. Dist. LEXIS 233789, at *31 (M.D. Fla. Dec. 30, 2022) (recognizing undue hardship in non-healthcare setting where providing accommodation "might compel other employers to accept less favorable working conditions by forcing them to rehearse and perform for extended periods of time in close proximity to individuals who were at higher risk of transmitting COVID-19").

Title VII does not require that safety be subordinated to the religious beliefs of an employee. *Draper v United States Pipe & Foundry Co*, 527 F.2d 515, 521 (6th Cir., 1975). *See also Kalsi v. New York City Transit Authority*, 62 F. Supp. 2d 745,

758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *EEOC v. Geo Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship."). Even after *Groff v. DeJoy,* 143 U.S. 2279 (2023), courts have found an undue hardship when the accommodation requested was an exemption to a vaccine policy. *See Petersen v. Snohomish Regional Fire and Rescue*, Case No C22-1674, 2024 U.S. Dist. LEXIS 13749, at *22 (W.D. Wash. Jan 25, 2024) ("Because unvaccinated firefighters are at a greater risk of contracting and spreading COVID-19, regardless of masking, PPE, testing, and social distancing, the Court concludes that Snohomish Fire could not reasonably accommodate Plaintiffs' vaccine exemption requests without undue hardship."); *Bordeaux v. Lions Gate Ent., Inc.*, 2023 U.S. Dist. LEXIS 209626, *34-35 (C.D. Calif. 2023) ("Accommodating Plaintiff's exemption request would have put the lives of her fellow cast and crew members in danger. Around the time that RTW Season 2 was filming, roughly 2,000 deaths per day were attributable to COVID-19. In and of itself, this safety risk constitutes an undue hardship"); *Beickert v. New York City Department of Education*, 22-CV-5265(DLI)(VMS), 2023 U.S. Dist. LEXIS 170719, at *14-15 (E.D.N.Y. Sept. 25, 2023) ("It is beyond cavil that safety within any work environment, especially an educational work environment, is of absolute importance.… Kushner's unvaccinated presence would have imposed 'substantial increased costs in relation

to the conduct of [the DOE's] particular business' by creating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment when COVID-19 vaccines had become available."); *Cagle v. Weill Cornell Medicine*, Case No. 22-cv-6951, 2023 U.S. Dist. LEXIS 113687 (S.D.N.Y. 2023) (finding undue hardship in vaccine case post *Groff*); *Mace v. Crouse Health Hospital*, Case No. 5:22-cv-1153, 2023 U.S. Dist. LEXIS 137479 (N.D.N.Y. Aug. 8, 2023) (same); *Conner v. Raver*, 2023 U.S. Dist. LEXIS 149360, *15 (N.D. Ca. Aug. 24, 2023)(same). As one court recently stated in a similar healthcare setting:

> It cannot be disputed that without the vaccine, Dr. Bushra was at great risk of contracting and transmitting the disease because he had frequent and direct contact with patients and staff as a doctor in the emergency room. Unvaccinated, Dr. Bushra risked infecting and even causing the death not only of his colleagues and MLH staff but also of vulnerable patients. The ability of MLH to continue its mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated Dr. Bushra in its midst. In sum, there can be no doubt that MLH would have incurred undue hardship in the form of substantial social, if not economic, costs if it had been required to accommodate Dr. Bushra's religious beliefs.

*Bushra v. Main Line Health, Inc*., 2023 U.S. Dist. LEXIS 229965, *22 (E.D. Pa. Dec. 28, 2023) (granting motion for summary judgment on religious accommodation claim of ER doctor post *Groff*). Even the cases pre-*Groff* made clear that the burden associated with exempting an individual from a COVID-19 vaccine mandate in the midst of the pandemic was significant; courts were not relying on a mere de minimis burden when they found undue hardship. *See e.g. Does v. Hochul*, 2022 U.S. Dist.

LEXIS 180025 at *145 (granting motion to dismiss finding that "exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a ***significant hardship***.")(emphasis added); *Algarin,* 2023 U.S. Dist. LEXIS 108666 at *23 ("Furthermore, tracking compliance with testing, permitting Plaintiff to potentially expose other workers at H+H to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all ***significant hardships*** that create an undue burden on Defendant with the requested accommodation.")(emphasis added). As the Supreme Court recognized in *Biden v. Missouri,* 595 U.S. 87, 142 S. Ct. 647, 651-52, 211 L. Ed. 2d 433 (2022), the Secretary of Health & Human Services ("HHS") determined that vaccination for healthcare workers was "necessary for the health and safety of individuals to whom care and services are furnished" and that unvaccinated staff pose a ***"serious threat"*** to the health and safety of patients, based on data showing that the COVID–19 virus can spread rapidly among healthcare workers and from them to patients, and that such spread is more likely when

healthcare workers are unvaccinated. Absent settlement, it is likely Plaintiffs' claims would be dismissed, and Plaintiffs and the class would receive nothing.[8]

Finally, even if dismissal and summary judgment could be avoided, Plaintiffs would have to convince a jury that Defendants should have allowed the doctors, nurses, and other healthcare professionals to go unvaccinated, in the midst of a global and deadly pandemic, even though they were caring for the most vulnerable patients (and potentially even caring for the jurors' loved ones).

Plaintiffs had a lengthy and uphill battle, which would likely end up in appellate challenges. And if Defendants ultimately prevailed (as they and many others have in similar cases), Plaintiffs would receive nothing. The District Court did not abuse its discretion.

---

[8] Plaintiffs' retaliation claims fare no better. "[T]he Sixth Circuit has recently stated, 'A request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation.' *Garczynski v. Accident Fund Insurance Co*., Case No. 22-cv-12615, 2023 U.S. Dist. LEXIS 84101 (E.D. Mich. May 12, 2023)(dismissing retaliation claim), quoting *Stanley v. ExpressJet Airlines, Inc.,* 808 F. App'x 351, 358 (6th Cir. 2020); *see also Diemond v. Mich. Dep't of Corr.*, No. 1:20-cv-473, 2020 U.S. Dist. LEXIS 112259, at **23-24 (W.D. Mich. June 26, 2020)(plaintiff cannot assert retaliation claim based on failed accommodation request); *Lucky v. Cobx. Co.*, Case No. 22-12514, 2023 U.S. Dist. LEXIS 81969, *7 (E.D. Mich. May 10, 2023) ("Lucky's amended complaint makes clear that she was terminated because she refused the vaccine, not because she requested a religious exemption.").

### b.    The District Court Had Sufficient Information To Weigh The Value Of The Claims.

The Objectors do not dispute the significant risk to the merits of their claims or the lengthy legal battle ahead of them in the absence of a settlement. Instead, they claim that there was not enough data to weigh the value of all claims. In a settlement like this, where the amount of settlement is based on the claims made, the amount added for each claim made compared to the individual claim is all that is needed to make this assessment. There is no total fund that gets divided regardless of the number of participants, where the total amount may be more relevant.

In this case, the settlement provides significant relief to the class. Under the settlement, Ascension is paying up to five weeks of average salary for each class member who submitted a valid claim. For many class members this amounts to full lost wages.[9] These amounts are added into one total settlement fund. After deducting approved attorney fees and costs from the total settlement fund, the claims administrator then distributes the remaining amount proportionally to the claiming class members. Appellants attempt to claim that insufficient information about the

---

[9] Defendants recognize that there may be some class members who claim to have been out longer than the typical suspension period. Due to the high demand for employees during this period, it is reasonable to conclude that most individuals were able to find other employment during this period. Indeed, many employees that Defendants tried to recall did not return because they found other employment. (Pratt Decl., RE 115-2, PageID 1453, ¶ 6)  Regardless, to the extent any individual believed their circumstances were different or that they could obtain a better result, they had the option to opt out of the class and settlement agreement.

total dollar value was provided, but each class member knew how much five-weeks of their base pay was and whether it adequately compensated them. As this was not a lump sum fund, the total amount is not relevant. The amount added to the fund per individual who made a claim was clear and all but nine class members who chose to stay in the class, concluded it was reasonable. The District Court after hundreds of pages of extensive briefing and a hearing also determined it was fair, reasonable and adequate in light of the litigation risk.

Appellants argue that a 5-week cap on lost wages is insufficient because some class members were out of work for more than 5 weeks. Contrary to Appellants' argument, this does not create a conflict between the class representatives and the class members. The Sixth Circuit has held that a "disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacy of representation." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). Mere dissatisfaction with the terms of a proposed settlement is insufficient to prove that the interests of class members are not adequately represented by their class representatives. *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 5751, *21 (S.D. Ohio Jan. 14, 2008).

Obviously, as in any settlement, the agreed upon amount is intended as a settlement, not a make whole remedy. All class members are entitled to the same form of relief as compensation for their alleged injuries—immediate payment to

compensate for their time off work as a result of the CVP. The use of an average weekly rate as opposed to individualized pay, and the exclusion of shift premiums, does not make the settlement unfair or inadequate. Settlements are meant to provide a reasonable resolution based on the claims of most individuals in the class when considering the costs and risks inherent with lengthy litigation. Thus, "settlements are compromises, and therefore, plaintiffs cannot get everything they want." *Olden v. Gardner*, 294 Fed. Appx. 210, 219 (6th Cir. 2008); *Alvarado v Memphis-Shelby Co Airport Auth,* Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259, at **15-16 (6th Cir. Aug. 15, 2000) (A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case).

In this case, the merits of the claims are highly disputed by the parties. And due to the number of class members involved and the varying reasons for why someone may have experienced a longer gap in employment, five weeks was a reasonable compromise. As was presented to the District Court, for individuals who were out longer, mitigation likely occurred. Indeed, many employees had obtained other employment before they were recalled. (Pratt Decl., RE 115-2, PageID 1453, ¶ 6) Moreover, the five-week cap was clear in all the settlement communications. With that knowledge, roughly 1,000 individuals who claimed to be out longer than five weeks filed claims agreeing this was a fair settlement and they did not want to

opt out. And roughly 1,000 individuals who claimed to be out less than five weeks, and who will receive smaller settlement amounts, similarly filed claims, agreeing this was a fair settlement.

Notably, the only other settlement of a similar class vaccine case of which Defendants are aware, is *Does v. Northshore University Health System*, Case No. 1:21-cv-5683 (N.D. Ill. 2022). In *Northshore*, the class members had all been terminated and the court approved a class settlement even though the settlement payments would not fully cover lost wages (let alone emotional distress). Indeed, each class member, regardless of position or rate of pay, was only slated to receive $24,225. Under this arrangement, some class members would undoubtedly receive a higher or lower percent of their lost wages than others.

Considering the substantial risk of losing by motion, at trial or on appeal and receiving nothing, and the significant delay before litigation would end, the class has secured meaningful relief by virtue of this settlement. The District Court did not abuse its discretion.

### 2. The District Court Correctly Found There was No Fraud or Collusion.

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Dover Glen Condo. Ass'n*, 2022 U.S. Dist. LEXIS 215745, at *7; *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or

collusion in negotiating the settlement unless evidence to the contrary is offered"). *See also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.").

Here, the District Court did not abuse its discretion in determining that the "settlement was the product of arm's length negotiations and not fraud or collusion." (Fairness Hearing Transcript, RE 135, PageID 2404)  The settlement stems from arm's-length negotiations that began in a settlement conference before Magistrate Judge Berens that ended in an impasse.  (RE 135, PageID 2403-04) *See Thomsen v. Morley Co., Inc.*, 639 F. Supp. 3d 758, 768, (E.D. Mich., Nov. 4, 2022) ("No evidence of fraud or collusion exists here"); *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at **6-7 (S.D. Ohio, Oct. 23, 2008) ("The participation of an independent mediator in the settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."). During these negotiations the Plaintiffs were represented by experienced counsel who litigated aggressively on their behalf.  Defendants were also represented by experienced counsel who litigated the matter aggressively on their behalf.  The final settlement reflected Plaintiffs' demand from the settlement conference that had previously ended in an impasse before the resumption of discussions.  (Fairness Hearing Transcript, RE 135, PageID 2376 at 16-24; PageID 2403-2404).  Additionally, the Court evaluated allegations of collusion raised by

Appellants' counsel and found the allegations unfounded and "wholly conclusory." (Order Denying Mot. to Intervene, RE 77, PageID 952-53; *See also* RE 114, PageID 1413-14 ("Objectors provide no factual basis on which their allegations of collusion rest, making such allegations wholly conclusory.")).

The settlement lacks any element of collusiveness such as excessive (or any) incentive payments, or excessive attorney fees. And while Defendants agreed not to contest a fee award of up to 33.33%, the settlement agreement was not contingent on the award of any attorney fees. (Settlement Agreement, Art. V, RE 60-1, PageID 483-84) The attorney fee provision permitted, but did not require, the Court to award up to one-third of the common fund of the settlement in attorney fees.[10] (*Id.*) There is no "clear sailing" provision or collusion to obtain higher fees for Plaintiffs' counsel. Ultimately, the Court could have set whatever fee it determined was appropriate. Nor, based on the terms of the agreement, is there any danger that Plaintiffs' counsel bargained away something of value with respect to the class since the larger the class payout, the higher the likely fee awarded by the Court.

Similarly, reversionary clauses are not a clear sign of collusion. Courts across the country have allowed reversionary clauses in class action settlement agreements.

---

[10] Common fund fee awards of 20-30% are common in class actions. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786, at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

*Monaco v. Historic Old Bermuda Inn, Inc.*, No. 18 Civ. 4101, 2020 U.S. Dist. LEXIS 267382, at *11 (E.D.N.Y. Apr. 3, 2020) (granting final approval of the settlement when, after examining all information provided at the final fairness hearing, it found the "possibility that the Parties' counsel came to a self-serving agreement is de minimis for several reasons."); *Minor v. FedEx Office & Print Servs.*, No. C091375 TEH, 2013 U.S. Dist. LEXIS 18224, at *14 (N.D. Cal. Feb. 8, 2013) (preliminarily approving settlement, noting that "the reversionary clause does not render the settlement inherently inadequate"). In this case, where the settlement is based on the claims made, the only amount that potentially reverts is an individual's payout if they do not cash their check. This is not a windfall for Defendants, nor otherwise unreasonable. *See Partl v. Volkswagen, AG*, 895 F.3d 597, 612 (9th Cir. 2017) ("reversion clauses can also have perfectly benign purposes and impacts, and so are not per se forbidden").

Similarly, the mere fact that there were other cases proceeding at the same time, does not throw into question the legitimacy of this settlement. Just because a deal could be reached in this case, does not mean a reverse auction or any improper conduct occurred. *Negrete v. Allianz Life Ins. Co.,* 523 F.3d 1091, 1100-1101 (9th Cir. 2008) ("[I]f Negrete's argument were accepted, the 'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle

without being accused by another of participating in a collusive reverse auction.'") (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)). Individuals who believe they could get a better deal or who think their claims are worth more had the ability to opt out. Indeed, one of the plaintiffs in the *Halczenko* case was actively encouraging individuals to opt out. (Pls. Response to Mot. to Strike, Exhibit 1, RE 105-1)

Finally, there is no impropriety in including in a settlement a description of claims broader than those that have been specifically pleaded. *Berardinelli v. General Am. Life Ins. Co*., 357 F.3d 800, 805 (8th Cir. 2004). *See also Doe v. Déjà Vu*, 925 F.3d at 900 ("This court has held that 'the question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a "factual predicate" with the claims pled in the complaint.'") (citation omitted). The release, by its express terms, only releases claims that "arose out of or could have arisen out of the facts alleged in this action." *See Olden*, 294 Fed Appx. at 219. (concluding similar release of all claims related to any alleged omissions was not overly broad: "Like any other settlement, this one requires the plaintiffs to release their claims against the defendant.").

There is simply no evidence of fraud or collusion and, thus, the settlement should not be disturbed. *Graham v. Peltz*, 44 F.4th 527, 536 (6th Cir. 2022). The District Court did not abuse its discretion.

### 3. The Complexity, Expense, and Likely Duration of the Litigation Also Favor Approval.

The District Court properly weighed the risks, expense, and delay Plaintiffs would face if they continued to prosecute the litigation through trial and appeal. The District Court determined that "Plaintiffs would likely expend significant resources on discovery regarding each individual's beliefs to determine their qualifications as class members. But for the settlement, further investigating this case through trial would be undeniably complex, costly, and long, and the parties would incur significant expense and delay." (Fairness Hearing Transcript, RE 135, PageID 2404) The District Court did not abuse its discretion finding that "the complexity, expense, and likely duration of this case renders it a good candidate for settlement." (*Id.*) Appellants do not dispute the District Court's decision on this point.

"[M]ost class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013. This case is no exception as it involves novel questions about Plaintiffs' religious beliefs, and whether those beliefs were sincerely held and conflicted with the vaccine requirement. Extensive discovery on each individual's beliefs to determine whether they even could qualify as a class member,

would be required in the absence of the settlement. In addition, with respect to undue hardship, Plaintiffs would likely need to expend significant resources on experts and expert discovery to counter the statements and conclusions of CMS with respect to the importance of having healthcare workers vaccinated. Because each position may require analysis as to whether there is an undue hardship, discovery, motions, and trial would be extensive. Class certification in a case like this would also be challenging and likely result in protracted disputes, discovery issues and legal challenges. Moreover, Defendants already had a pending Motion to Dismiss. Even if Plaintiffs could survive that motion, they would subsequently face other dispositive motions including a motion for summary judgment and opposition to any class certification. In addition to the many individual issues concerning religious beliefs and undue hardship, even a successful trial would result in extensive fact intensive review of mitigation and damages for each class member, resulting in further delay and expense. And due to the novel nature of the issues raised, and the early stages of the new religious accommodation standard, it is likely that any decision would be subject to appeal, possibly even to the Supreme Court.

Given the nature of these claims, litigating this case through trial would be complex, costly, and long. By reaching a favorable settlement before dispositive motions or trial, the parties avoided significant expense and delay, and ensured recovery for Plaintiffs and the class, allowing everyone to largely put this matter

behind them. Appellants do not dispute that this factor favors settlement approval. The District Court did not abuse its discretion.

### 4. **Amount of Discovery Engaged in by the Parties.**

The relevant inquiry over this factor is whether the Plaintiffs have obtained an adequate understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *Dover Glen,* 2022 U.S. Dist. LEXIS 215745, \*7-8, *citing In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1015. "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions." *Scheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at \*19 n.3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

The District Court correctly determined that the parties had sufficient discovery to evaluate the merits of their claims. (Fairness Hearing Transcript, RE 135, PageID 2405) The District Court was correct to find that the amount of discovery engaged in allowed the Plaintiffs to sufficiently evaluate their position relative to defendants' defenses. The underlying facts regarding the global pandemic and the institution and content of the CVP are largely undisputed. Additionally, Plaintiffs were fully aware of their accommodation requests, their job duties and the denial of the accommodations. And Defendants had already filed a motion to

dismiss, allowing Plaintiffs to assess how their claims compared to Defendants' defenses.

The primary issues in the case were whether Plaintiffs could establish they had sincerely held religious beliefs that conflicted with the vaccine requirement (which Plaintiffs have the relevant information to assess) and whether allowing Plaintiffs to work unvaccinated posed an undue hardship on Defendants (the facts of which are largely undisputed, the parties just have different views as to whether it qualifies as an undue hardship). Plaintiffs are fully aware of their accommodation requests, their job duties and the denial of the accommodations. Plaintiffs, who are connected through social media and otherwise, to other class members, were generally aware of the period of time most were off work. The District Court did not abuse its discretion in determining that Plaintiffs had sufficient information to evaluate their position relative to Defendants' defenses and to decide on the reasonableness of the settlement, regardless of the amount of formal discovery that had occurred.

### 5. The Opinions of Class Counsel and Class Representatives

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Regions Morgan Keegan Secs.*, 2014 U.S. Dist. LEXIS 204978, at *19 (W.D. Tenn. Dec. 24,

2014) (*citing Thacker v. Chesapeake Appalachia, LLC*, 695 F. Supp. 2d 521, 532-33 (W.D. Ky. March 3, 2010)).  Class Counsel and the Class Representatives strongly supported this settlement, and their recommendation was entitled to deference. (Joint Mot.  To Approve Settlement, RE 60, PageID 463-64).

The Court noted that Class Counsel had "an extensive number of cases" before the court that involved similar claims.  (Fairness Hearing Transcript, RE 135, PageID 2406)  The Court also noted that all four class representatives certified that they believed the settlement was fair, reasonable, and adequate.  (RE 135, PageID 2407).

Similarly, Defendants' counsel, who are experienced in litigation and resolution of class actions, had sufficient information to evaluate the strength of Plaintiffs' claims and believes the settlement is fair and reasonable for the class, and the Defendants.  The district court was correct to give deference and weight to the opinions of counsel and the class representatives and properly determined that this factor was satisfied.  (Fairness Hearing Transcript, RE 135, PageID 2407)

## 6.     The Reaction of Absent Class Members

The District Court correctly determined that "there was minimal opposition from class members."  (Fairness Hearing Transcript, RE 135, PageID 2407)  The District Court also correctly noted that "Each class member – each absent class member knows how long they were out of work or if they were fired.  This settlement

allowed for an informed decision by each class member as to what their options were and what they should choose to do." (RE 135, PageID 2408) All of the requirements of Rule 23 were satisfied here. Appellants do not dispute this. All potential class members were sent a notice packet, including a plain language explanation of the settlement, claim and exclusion forms and a website with additional details including the full and complete copy of the settlement agreement. (Claims Administrator Decl., RE 115-3, PageID 1456-58, ¶¶ 8-18) The notice was approved by the District Court as the best notice practicable under the circumstances. (Order Granting Preliminary Approval, RE 63, PageID 577, ¶ 12) Consistent with the Sixth Circuit's requirements, the class notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *UAW v. GMC*, 497 F.3d at 629. Appellants have not asserted any issue with the notice. Notice was distributed to 4,642 potential class members.

The reaction in favor of settlement was strong. Only 6% of the potential class members opted out of the settlement. Notably, 87 of the 281 of the opt-outs (about 31% of the opt-outs) are Plaintiffs in the *Halczenko* action in Indiana, where Appellants' attorney is also the attorney. Excluding the *Halczenko* opt-outs, only 4.2% of the potential class members have opted out of the settlement. And other than the eight individuals that Halczenko's attorney has filed an objection through,

only one other individual has filed an objection. Meanwhile, 2,703 (58%) have timely filed a claim.[11]

The "small percentage of class members objecting to the Settlement supports the Court's approval of it." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) ("Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement."); *In re Sinus Buster Prods. Consumer Litig.,* No. 12–CV–2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415, at *9, *20-21 (E.D.N.Y. Nov. 10, 2014); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 231, 239 (E.D.N.Y.2010); *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C.1990) (alteration in original) (quoting 2 H. Newberg, Newberg on Class Actions § 11.47, at 463 (2d ed.) ("[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D.Mich.2003) ("That the overwhelming

---

[11] Notably, the 4,642 individuals who received notice were ***potential*** Class Members. Notice was provided to all individuals who had been denied a religious accommodation and were not compliant with the vaccine requirement by November 12, 2021. (Pratt Decl., RE 115-2, PageID 1453, ¶ 7) Not all persons who received notice are Class Members. Some individuals may have requested an exemption but are unable to certify that they actually have a sincerely held religious belief that conflicted with the vaccine requirement. Others may have left employment for other reasons or immediately found other employment. Others may have been in jurisdictions where individuals either were never suspended or were recalled before the individual lost any pay. That 58% of the potential class members affirmatively made a claim strongly favors settlement.

majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'").[12]  The District Court did not abuse its discretion in finding this factor met, and Appellants do not contend otherwise.

### 7.    <u>The Public Interest</u>

The law favors the settlement of class action litigation.  *See UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions").  As the District Court properly noted, "The settlement in this case is consistent with the public interest by providing immediate relief to the class members, avoiding further litigation and risk to the class members in this case, and avoids the expenditure of further judicial resources."  (Fairness Hearing Transcript, RE 135, PageID 2408) Class action suits are "notoriously difficult and unpredictable and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203,

---

[12] Courts have approved settlements with far higher objection and opt-out rates than present here.  *See e.g., In re Oil Spill by the Oil Rig "Deepwater Horizon.* 910 F. Supp. 2d 891, 937 (E.D. La. 2012); *Reed v General Motors Corp.,* 703  F.2d 170, 174-175 (5th Cir.1983) (objections by 40% of class); *Huguley v. Gen. Motors Corp.*, No. 89-2172, 1991 U.S. App. LEXIS 2993, *9 (6th Cir. Feb. 22, 1991) (table) (per curiam) (15% of the class); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir.1987) (36% of the class); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir.1985) (15% of the class); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir.1974) (20% of the class).

1205 (6th Cir. 1992)). Thus, the public's interest in judicial economy and amicable dispute resolution favors settlement on the terms voluntarily agreed to by the Parties. The District did not abuse its discretion in finding this factor favored approval and Appellants do not contend otherwise.

### D. Appellants Arguments Fail to Establish Any Abuse of Discretion.

As discussed above, Appellants challenge very few of the factors that the District Court found favored approval. Appellants have cited no clear error of judgment by the District Court, no application of an incorrect legal standard, no misapplication of the correct legal standard, and no reliance upon clearly erroneous findings of fact. Appellants simply do not agree with the strategy and terms of the agreement, but wanting premium pay included or individualized data (even though it is a class case) rather than average data used is not sufficient to overturn a class settlement.

Appellants' remaining arguments also do not establish an abuse of discretion.

### 1. The District Court did not abuse its discretion by allowing the Parties to file the Third Amended Complaint.

In a class action, standing is satisfied so long as at least one named plaintiff can demonstrate the requisite injury. *Hyland v. Navient Corp*., 48 F.4th 110, 117-18 (2d Cir. 2022) (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565, 204 L. Ed. 2d 978 (2019) "For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue.").

The named Plaintiffs in this case alleged they suffered an injury that was caused by Ascension Health Alliance's enactment and enforcement of the CVP across its network of hospitals. (Third Amended Complaint, RE 65, PageID 596) All of the Defendants are part of that network. All named Plaintiffs allege that Ascension's denial of their religious exemption request, and the subsequent time they were forced to take away from work unpaid because of the Ascension CVP, amounted to religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (RE 65, PageID 608-609) All class members similarly were suspended or otherwise lost employment because of that CVP. The named plaintiffs had standing to sue because: (1) they allegedly suffered an injury in fact in the form of unpaid time away from work, (2) that was caused by Ascension Health Alliance and its affiliates enacting the CVP and denying religious exemption requests under the policy, (3) that is redressable by the monetary compensation that they will receive to remediate for those lost wages. Only one plaintiff is required to have standing for a class action. *Hyland*, 48 F.4th at 117-18.

Additionally, that the District Court approved the alleged conditional Third Amended Complaint was not an abuse of discretion. It is not unusual for parties to conditionally amend a complaint for settlement purposes. *See Harris v. Vector Mktg, Corp.*, No. C-08-5198, 2011 U.S. Dist. LEXIS 48878, *18, 21 (N.D. Cal. Apr.

29, 2011); *McCabe v. Six Continents Hotels, Inc*., No. 12-cv-04818, 2015 U.S. Dist.

LEXIS 85084, *12-13 (N.D. Cal. June 30, 2015).

### 2. Appellants' Objection to the Court's Award of Attorney Fees Is Evidence That They Are Simply Grasping At Straws.

Finally, Appellants try to argue that the District Court did not provide a clear

statement of its reasoning for adopting a particular attorney fee methodology and the

factors considered. (Doc. 29, p. 69) This is simply false. The District Court

explained:

> Based on the Court's review of the record, including the documentation submitted, the Court finds that the fees requested, based on a percentage of the fund method after deduction of costs, are reasonable considering the benefits to the class members, which is receipt of up to five weeks pay, the duration of their suspension before they were told they could come back; an additional benefit given that class members who did not submit EEOC charges may have been left without recourse absent the settlement; the hourly value of class counsel's efforts, which have been described as thousands of hours, including communication with hundreds of putative class members; the one-third of the settlement fund is broadly within the rates that are typical for this type of litigation; the fact that this case was taken on a contingency fee basis; society's interest in the enforcement of Title VII and protecting religious freedom and in compensating attorneys who obtain awards in high risk contingency fee cases; the complexity of class litigation in general and in Title VII cases and this case in particular; and the demonstrated professional skill, competence and experience of counsel on both sides, which I have had the opportunity in this year's span to see firsthand."

(Fairness Hearing Transcript, RE 135, PageID 2412)

Appellants have failed to establish any clear error of judgment by the District

Court. The District Court's decision should be affirmed.

## CONCLUSION

The District Court did not abuse its discretion in approving the Class Action Settlement. Defendants-Appellees respectfully request this Court affirm the District Court's Final Order and Judgment.

Respectfully Submitted,
**JACKSON LEWIS P.C.**

*/s/ Patricia Anderson Pryor*
Patricia Anderson Pryor
Blythe McGregor
Zachary J. LeCompte
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050
Patricia.pryor@jacksonlewis.com
*Attorneys for Defendants*

Allan S. Rubin
Elyse K. Culberson
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
Allan.rubin@jacksonlewis.com
Elyse.culberson@jacksonlewis.com

# CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,351 words, excluding the items outlined in Rule 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in proportionally spaced typeface using 14 point Times New Roman.


*s/ Patricia Anderson Pryor*
Patricia Anderson Pryor
Attorney for Defendants-Appellees
Dated: February 29, 2024

## CERTIFICATE OF SERVICE

I certify that, on February 29, 2024, a true and accurate copy of the foregoing was filed with the Court's CM/ECF system which will serve notice on all counsel of record.

*s/ Patricia Anderson Pryor*

Patricia Anderson Pryor

# Addendum: Designation of Relevant District Court Documents

| Record Entry | Description | PageID Range |
|---|---|---|
| RE 1 | Complaint | 1-26 |
| RE 30 | Case Management Order | 207-210 |
| RE 38 | Motion to Dismiss | 284-295 |
| RE 60 | Joint Motion for Settlement | 450-464 |
| RE 60-1 | Settlement Agreement | 465-558 |
| RE 63 | Order Granting Joint Motion for Preliminary Approval | 574-582 |
| RE 64 | Notice of Fairness Hearing | 583 |
| RE 65 | Third Amended Complaint | 584-616 |
| RE 66 | Defendants' Certificate of Service of CAFA Notice | 617-621 |
| RE 67 | Motion to Intervene | 622-628 |
| RE 68 | Emergency Motion to Set Aside and Transfer | 630-660 |
| RE 76 | Defendants' Response in Opposition to Motion to Intervene | 916-939 |
| RE 77 | Opinion and Order Denying Motion to Intervene | 942-955 |
| RE 78 | Notice of Appeal Denial of Intervention | 956-958 |
| RE 93 | Motion to Stay Pending Appeal | 1143-1148 |

| RE 95 | Halczenko's Memorandum in Support of Motion to Stay Pending Appeal | 1157-1174 |
|---|---|---|
| RE 100 | Halczenko's Motion to Strike | 1199-1204 |
| RE 105-1 | Plaintiffs' Response to Motion to Strike, Exhibit 1 | 1250-1255 |
| RE 106 | Order Denying Motion to Stay Pending Appeal and Dismissing Motion to Strike | 1256-1261 |
| RE 108 | Joint Objection | 1268-1328 |
| RE 109 | Objectors' Motion for Discovery | 1329-1337 |
| RE 114 | Order Denying Objectors' Motion for Discovery | 1412-1414 |
| RE 115 | Memorandum in Support of Motion for Settlement | 1415-1449 |
| RE 115-2 | Declaration of Audra Pratt | 1451-1453 |
| RE 115-3 | Declaration of Claims Administrator | 1454-1458 |
| RE 117 | Motion for Settlement, Attorneys Fees and Expenses | 1483-1513 |
| RE 119 | Defendants' Supplement to Joint Motion, Responding to Objections and Opt-Outs | 1755-1769 |
| RE 121 | Plaintiffs' Response to Joint Objection | 1775-1789 |

| RE 124 | Objectors' Motion to Supplement Objections with Declarations | 2124-2126 |
|--------|---------------------------------------------------------------|-----------|
| RE 130 | Objectors' Combined Response to Motion and Memorandum for Approval (RE 115 and 117) | 2251-2300 |
| RE 134 | Order Granting Motion for Settlement | 2345-2346 |
| RE 135 | Fairness Hearing Transcript | 2347-2415 |
| RE 137 | Notice of Appeal by Objectors | 2425-2426 |
| RE 138 | Final Order and Judgment | 2427-2435 |
| RE 140 | Amended Notice of Appeal by Objectors | 2439-2441 |

4860-1855-9397, v. 7